(99 South. 610)

No. 24395.

HUSK et al. v. BLANCAND.

(March 17, 1924.)

*(Syllabus by Editorial Staff.)*

1. **Attorney and client** ⬅166(3)—**Attorney's claim as to amount of contingent fee held sustained by evidence.**

In a client's action against the attorney to recover an amount retained in excess of the fee which the client claimed was to be charged in an action for wrongful death, plaintiff alleging the contract to be one for 20 per cent. of the recovery, and defendant claiming that the contract was for 50 per cent., no fee to be charged in case of no recovery, *held*, that the contract as asserted by defendant was sufficiently established by the evidence.

2. **Attorney and client** ⬅144—**When contract for services on contingent fee basis subject to correction by courts stated.**

The members of the bar are in a certain sense officers of the court, and their contracts for professional services on a contingent fee basis in personal injury actions may not as a matter of law be regarded as not subject to inquiry and correction by the courts if found unreasonable, greatly in excess of the value of the services rendered, and beyond the ability of the client to pay.

3. **Attorney and client** ⬅147—**Contingent fee of 50 per cent. not unreasonable in death action.**

In an action for wrongful death, where after two trials a recovery of $10,600 against a street railway company was had, a fee of 50 per cent. was not unreasonable, the attorney being obligated for costs.

4. **Guardian and ward** ⬅49—**Tutorship; minor's tutor held authorized to contract attorney's fee contingent on recovery for father's death.**

A mother, as the tutrix of her minor son, had authority to employ counsel to represent him in action to recover for the death of the

father, and was authorized to contract on his behalf for a 50 per cent. attorney's fee contingent on recovery.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Mrs. Edna Thompson Husk and another against Gus Blancand. Judgment for defendant, and plaintiffs appeal. Affirmed.

Miller, Miller & Fletchinger, of New Orleans, for appellants.

Spencer, Gidière, Phelps & Dunbar, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. On October 12, 1916, Charles R. Husk was killed in this city by a street car. The defendant was employed by the widow of the deceased to bring suit against the New Orleans Railway & Light Company in her behalf and on behalf of her minor son, issue of her marriage with the deceased, for damages for the death of the husband and father. The defendant employed two other attorneys, Messrs. Callan and Viosca, to assist him in the suit.

The suit was filed in the federal District Court, and, after a second trial (the first resulted in a mistrial), a verdict was rendered in plaintiffs' favor against the railway and light company for $15,000. This amount was reduced by agreement to $10,600, which was paid by the company to the defendant herein.

The defendant paid his two associates $1,-744.40 each, and tendered Mrs. Husk, the widow, his check for $5,300, being 50 per cent. of the amount received in the compromise settlement of the judgment. The check was declined by Mrs. Husk for the reason that the amount retained by the attorney as his fee was in excess of the compensation due the attorney under the agreement as she understood it. The amount tendered by the attorney was subsequently accepted without prejudice to the plaintiff's right to sue for the balance which Mrs. Husk claimed was due her.

The present suit is brought by Mrs. Husk, individually and on behalf of her minor son, to recover of the attorney the sum of $3,180, the amount retained by the attorney over and above the fee which the plaintiff claims was to be charged.

The theory upon which the plaintiff bases her suit is that, while there was no definite contract as to the fee to be charged by the attorney, he led her to believe that as a friend of her husband he would handle the case on a fee basis not to exceed 20 per cent. of the amount recovered. She alleges that the amount charged by the defendant was excessive and contrary to the representations made to her by the defendant and upon the faith of which she acted when the employment was had, and that a fee of 20 per cent. would have been a fair, liberal, and ample payment for the services rendered by the defendant.

The defense is that prior to the institution of the suit for damages for the death of Husk a verbal agreement was entered into between the attorney and Mrs. Husk, acting individually and on behalf of her minor son, by which he was to charge no fee whatever in the event there was no recovery from the railway and light company, but in the event there was a recovery he was to receive a fee of 50 per cent. of the amount recovered. It is alleged that it has been for many years usual and customary among reputable members of the bar of the city of New Orleans to charge a fee of 50 per cent. of the amount recovered in suits for personal injuries, when the fee is contingent purely upon success, and particularly when recovery is had as a result of a judgment after a protracted trial.

After a trial in the court below a judg-

ment was rendered rejecting the plaintiff's demand, and she has appealed.

It results from what has already been said that the primary question to be determined is whether there was a contract fixing a contingent fee at 50 per cent. of the amount recovered, as claimed by defendant, or at not exceeding 20 per cent. of the amount recovered, as contended by the plaintiff. Upon this question it must be confessed that the testimony is painfully conflicting. There can be no doubt, however, that the defendant was employed to bring the suit and that the suit was vigorously and expeditiously prosecuted to a successful termination by the defendant and his two associates.

At the only meeting in which the subject of the fee was discussed there were present Mrs. Husk; her husband's sister, Miss Flora Husk; and the defendant. Mrs. Husk testified that she asked the defendant to tell her, as near as he could, what the fee would be, and that he said he had worked for the boys at the brewery, where Mr. Husk was employed, at a very reasonable fee, and that he gave an illustration of a man who had gotten a judgment for $1,000 and that this man paid him $200 for his fee, and he felt that was reasonable, and led her to believe that his fee would not be more than 20 per cent.; that the defendant did not fix any definite amount except by way of illustration as already stated; that she made it a point and asked him twice to get him to express himself with regard to a fee and he seemed to evade the question; that there was no discussion whatever as to paying a fee, win or lose, and that she naturally expected to have the costs to pay and the fee of the attorney if no recovery was had.

Miss Flora Husk testified in substance: That her sister asked how much would be his fee, and the defendant said the usual fee was 50 per cent., but he always worked for the boys at the brewery for about what they could afford to pay, or what they were able to pay, and then he related an instance where he charged $200 or $300 for the recovery of $1,000; that she told her sister to ask him what the fee would be, but he would not state expressly what would be the amount; that he just got around it in that way, by saying that he charged these people $200 or $300 for this $1,000 case. This witness further stated that the impression she got from what was said at the meeting referred to was that the fee would be a third of the amount collected, considering that the amount the attorney had collected for those other men was a smaller amount than he collected for this plaintiff; that the attorney said to Mrs. Husk that she understood that, if there was no recovery, he got no fee.

It is very clear from the testimony of these two ladies that they each got a different impression from what was said at the meeting in which the subject of the fee was discussed. Mrs. Husk understood that the fee would not exceed 20 per cent. of the amount recovered and that if no recovery was had she was to pay the cost and the fee of the attorney, while Miss Husk's impression was that the fee might be a third of the amount collected and that Mrs. Husk understood that if there was no recovery she would have no attorney fees to pay.

The meeting at which the subject of the fee was discussed was brought about by a letter which Mrs. Husk received from her brother in which he suggested that she ought to find out what the costs of the suit would be and in which he admonished her that she should get an estimate in case she won and another in case she lost.

The defendant testified that Mrs. Husk and Miss Flora Husk came to his office and presented him a letter from Mrs. Husk's brother, in which the question of the fee was brought up. That he was glad of the opportunity to broach the subject to her, and

told her clearly and plainly that there were two methods of handling personal injury cases in this state. First of all, a cash fee payable in advance, in which the plaintiff advanced the costs and took the chances of losing or winning; or a 50 per cent. contingent fee. That the contingent fee was based on the attorney advancing the costs and dividing the recovery with the plaintiff. That to a question of Mrs. Husk:

"Well, isn't that somewhat excessive?"

He replied:

"Mrs. Husk, I will illustrate; in cases where I have handled the brewery affairs—take for instance the Rau Case which has just been settled for $1,000, although an agreement for 50 per cent. had been had with Mr. Rau, we did not retain 50 per cent., but retained only $200, or 20 per cent., because the Railway Company admitted liability after our suit and settled with us, although they had offered us in compromise only $150."
"There was no dispute as to liability, only as to the quantum. I illustrated by that particular case."

The defendant further stated that he was to advance the costs and that he was to receive no fee in the event no recovery was had, and that Mrs. Husk agreed to the arrangement. The agreement as to the contingent fee was immediately communicated by the defendant to his two associates, to which they reluctantly consented though they condemned the arrangement, being of the opinion that the case was a hopeless one.

[1] In the light of the evidence and the attending circumstances we are of the opinion that the contract as asserted by the defendant has been sufficiently established. It is hardly fair to assume that the defendant, who has had quite a bit of experience in handling personal injury cases, would have proceeded with such an important litigation and would have associated with him two other reputable members of the bar and agreed to pay them one-sixth each of his fee without a definite understanding as to the compensation he was to receive. As we have stated, there is no dispute of the defendant's employment, and it cannot be reasonably contended that the fee was to be paid otherwise than from the fund recovered.

Moreover, it seems very strange that having taken the advice of her brother and having called on her attorney for the special purpose of having a definite understanding concerning the fee and costs, that Mrs. Husk would have left the conference and thereafter permitted the suit to be instituted and prosecuted to judgment, with the question of the amount of the fee left unsettled and in doubt. The subject of the fee was never again mentioned by the plaintiff until the check was presented to her.

It is conceded in plaintiff's brief that the defendant believed that he had a contract with the plaintiff on a 50 per cent. basis. That belief could have had no foundation otherwise than from what was said at the only meeting at which the subject was discussed. The plaintiff had no reason to believe differently. If she did not so understand the contract, she should have said so at the time and should not have permitted the suit to be instituted and prosecuted by the attorney, with the matter of the fee left uncertain and in doubt in her mind.

The validity and binding effect of such a contract as here invoked has been recognized and enforced frequently in this state. Andirac v. Richardson, 125 La. 883, 51 South. 1024; Stiles v. Bruton, 134 La. 523, 64 South. 399.

[2] In referring to and approving the doctrine of the cases cited, we are not to be understood as giving unqualified assent to the rigor of the rule that the contract in such cases is "the law between the parties," and that "as a party binds himself, so shall he be bound." The legal profession is an arm and support of the administration of justice, and the members of the bar are in

a certain sense officers of the court, and their contracts for professional services on a contingent fee basis in cases such as the instant one may not as a matter of law be regarded as not subject to inquiry and correction by the courts if found unreasonable, greatly in excess of the value of the services rendered, and beyond the ability of the client to pay.

[3] Our examination of the record and evidence in this case has not satisfied us that the fee retained by the defendant was out of proportion to the services rendered nor unreasonable. Indeed practically all of the members of the bar engaged in this class of cases who testified in the case support the fact by their testimony that the contract in this instance was a reasonable one and the amount charged has not exceeded the value of the services rendered in the preparation and trial of the damage suit. Further than this it seems to be almost the universal custom among members of the bar who handle personal injury cases to charge a 50 per cent. fee where the employment is on a contingent basis and the attorney is obligated for the costs and the case is contested.

While the testimony of members of the bar is not necessarily controlling and binding on the court, at the same time it must be conceded that such evidence is an important aid and a valuable guide to the court in arriving at the fairness and reasonableness of the fee charged. Hunt v. Hill, 138 La. 589, 70 South. 522.

There is some testimony of members of the bar to the effect that a fee of 50 per cent. is excessive, but this testimony seems to be confined to those members of the bar who are opposed to the contingent fee system and who rarely engage in personal injury litigation. We are not called on to consider the ethical and moral phase of the question. Suffice it to say that statutory law and jurisprudence both recognize the legality and propriety of such contracts.

[4] It is urged that Mrs. Husk, though competent to make such a contract for herself individually, could not bind her minor son, and that the minor's interest in the fund retained by the defendant should be recovered. It is true as a general rule that a tutor cannot, without the advice of a family meeting, make a contract that would be binding on the minor for an amount that would be in excess of the minor's revenue, but that rule we think cannot be invoked in a case like the present one. The widow could not have recovered for the death of her husband without engaging the services of an attorney, and, in making a contract for herself individually, it became her duty at the same time to have her minor son represented. She unquestionably had the authority to employ counsel to represent her minor son, and having such authority, she was authorized to contract on behalf of her minor son for the fee to be paid contingent on recovery. A similar question was considered by the United States Supreme Court in the case of Taylor v. Bemiss, 110 U. S. 42, 3 Sup. Ct. 441, 28 L. Ed. 64, in which that tribunal said:

"The bill of the minor heirs states that Mrs. Bemiss had been appointed by the proper court in Louisiana natural tutrix of these children. We are of opinion that this appointment made it her duty to take the necessary legal steps to obtain this money from the United States, and that, whether the suit was brought in her own name or in hers jointly with her children, she was equally bound to prosecute it with diligence, and to do all that was necessary to recover the money. It would be a queer condition of the law if, while it imposed this obligation upon her, it gave her no authority to employ counsel to prosecute the claim before the only legal tribunal which could allow it; and if she could employ counsel, it follows as a matter of course, she could make a contract for the amount of their compensation. This agreement would bind her as tutrix as well as in her individual right, and it is in both characters she professes to contract.

"Such undoubtedly is the law of Louisiana, which must govern as to her powers as tutrix, since it is there she was appointed, and there both she and her children resided when she made the agreement with Taylor and Wood."

However, independent of any contract which would be binding on the minor, his obligation in this case must be measured by the same standard as that of the mother, in proportion to the benefits received.

In the case of Succession of Hanna, 135 La. 1043, 66 South. 355, this court, while holding that the contract as to the minor was unauthorized, said:

"* * *' It was therefore unauthorized by law, and plaintiff's claim rests, not upon the contract, but upon the equitable principle that no one can be enriched at the expense of another, and that even a minor [child] should, ex æquo et bono and within certain limits, be held liable to the extent of benefits actually received."

For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.