313 So.2d 371 (1975)
Walter SMITH
v.
WESTSIDE TRANSIT LINES, INC. and Liberty Mutual Insurance Company.
No. 6734.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1975.
Rehearing Denied June 11, 1975.
Writ Refused September 11, 1975.
*372 Fine & Waltzer, Bruce C. Waltzer, New Orleans, for plaintiff-appellee.
Dodd, Hirsch, Barker, Meunier, Boudreaux & Lamy, Harold J. Lamy, New Orleans, for intervenor-appellee Frank S. Bruno.
Before REDMANN, STOULIG and SCHOTT, JJ.
SCHOTT, Judge.
This appeal was taken by Frank S. Bruno, an attorney at law, from a judgment on his petition of intervention in his favor against Walter Smith for $2400.
On July 29, 1970, appellant was employed by Smith to represent him in connection with personal injuries he sustained on July 27, 1970. The written contract of employment prepared by appellant provided for a contingent fee to appellant of one-third of any amounts "collected by him by settlement" and 40% of any amounts "collected by actual litigation." It further provided "that neither party can settle without consent of the other."
On April 29, 1971, appellant filed a suit on Smith's behalf and in due course, after various pleadings were filed and discovery devices were employed, a pre-trial conference was held on July 5, 1972, at which time the case was scheduled for trial before a jury on November 8. On July 24 counsel for defendants moved for a continuance, and on September 15 this motion was granted by the trial judge. In the meantime, on September 14, 1972, Smith by letter to appellant notified him that his employment as attorney was terminated and requested that his file be sent to Mr. Bruce C. Waltzer for further representation in the matter. On November 8 Smith contacted the State Bar Association for assistance *373 in obtaining his file from appellant who, after releasing Smith's file, filed a petition of intervention on December 27, 1972, on which he claimed either one-third or 40% of whatever amounts would be received by Smith as a result of the litigation, and in the alternative the sum of $11,650 on the basis of quantum meruit computed at $50 per hour for 233 hours of work done in Smith's behalf.
While the petition of intervention purports to have attached a copy of appellant's contract of employment the record shows that it was not filed as an exhibit or otherwise made a part of the record. Also, while a request was made for service of the petition of intervention on both Smith and the defendants at the time it was filed the record shows that no service of it was made until October 25, 1973. In the meantime defendants settled the case with Smith for $25,000 and on October 19, 1973, Smith's case was dismissed.
The record and the testimony taken at the trial of the intervention demonstrate that appellant was ably and diligently handling Smith's case when he was discharged. Because the case was to be tried to a jury the earliest date possible was in November, 1972. The stated grounds for the continuance requested by defendants were such that one would reasonably expect the motion to be granted. Unfortunately, the procedure in the trial court was such that the case would be postponed until the next jury term one year later. Shortly after the motion for continuance was filed, appellant, sensing that this development would cause already strained relations between himself and Smith to deteriorate further, tried without success to salvage some other trial date in November, 1972. It was when appellant informed Smith of these developments that he was told that his employment was terminated.
Out of the settlement of $25,000, $6,000 was paid to Smith's employer's compensation carrier and 40% of the $19,000 difference, or $7,600 was paid to Smith's new attorney, Bruce C. Waltzer. For the duration of appellant's representation, no offer of $25,000 was made to or refused by Smith.
Appellant had kept no time records during his representation but made his estimate of 233 hours spent on the case by reconstructing and analyzing the evolution of the case. He produced as an expert an attorney who testified that an hourly rate of $50 was appropriate. However, both appellant and the expert maintained that personal injury tort claims taken on a contingent fee basis are not susceptible to compensation at an hourly rate, and they thereby explained the absence of time records.
The trial judge, concluding that appellant was entitled to recover a fee on a quantum meruit basis, found that a fee based on 60 hours at an hourly rate of $40, or $2,400, would do substantial justice.
In this Court appellant makes the following assignment of errors in the judgment of the trial court:
"I. The contract of legal representation does not fall when client discharged attorney without cause.
II. Quantum Meruit applies only when there is just cause for the attorney's discharge.
III. Trial court cannot arbitrarily fix attorney's fees under Quantum Meruit contrary to the evidence.
IV. Intervenor's claim should be charged to Defendants, Westside Transit Lines, Inc., and Liberty Mutual Insurance Company as well as to Plaintiff."
The first and second errors assigned by appellant are not susceptible of easy disposition, despite the fact that one of the cases relied upon by appellant, Doucet v. Standard Supply & Hardware Company, 250 So.2d 549 (La.App.3rd Cir. 1971), is clearly distinguishable and does not support appellant's position. In that case, the attorney *374 with a contingent fee contract had actually been offered a settlement, which offer was transmitted to the client with the recommendation that it be accepted. Thereafter, the attorney was discharged by the client, a second attorney was employed, the case was tried in due course and the client's recovery was less than that which had been offered through the first attorney. The court held that the first attorney was entitled to his full contingent fee on the amount of the settlement offer transmitted to and rejected by the client, because the attorney's employment was terminated after the attorney satisfied the condition of the contract which entitled him to the stipulated fee, citing C.C. Art. 3022. A result similar to that reached in the Doucet case was also reached in Andirac v. Richardson, 125 La. 883, 51 So. 1024. but the other three cases relied upon by appellant, D'Avricourt v. Seeger, 169 La. 620, 125 So. 735 (1929), United Gas Public Service Co. v. Christian, 186 La. 689, 173 So. 174 (1937) and Carlson v. Nopal Lines, 5 Cir., 460 F.2d 1209, tend to support appellant's position but are difficult to reconcile with other cases, especially some of the more recent ones.
In the D'Avricourt case, the attorney entered into a contract with the clients obligating himself to place the heirs (clients) in possession of property and to effect a partition sale of the property for a fee of $10,000 to be paid 60 days after the heirs were placed in possession. The attorney proceeded in accordance with the contract, but after the property was sold at public auction the adjudicatee refused to comply with his bid whereupon two of the three clients sold their interest in the property to a third party. The court found that the attorney had been prevented from the performance of his contract by the action of the clients in selling their interest in the property and held that he was entitled to his full fee. The court held:
"It is expressly provided in article 2040 of the Civil Code that: `The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.'
"The contract of sale of the two-thirds interest of Mrs. Bickmann and Mrs. Manzella to the Gentilly Development Company was clearly an act, on their part, of entering into another contract destructive of their first contract with plaintiff. A party cannot get out of his contract in that manner. No one can be permitted to take advantage of his own wrong. Lloyd v. Dickson et al., 116 La. 90, 92, 40 So. 542."
In the United Gas Public Service Co. case, at the time the attorneys were employed by the client they were conveyed an interest in immovable property in exchange for their undertaking to represent the client. Before the attorneys undertook any legal action the client employed other counsel without any notice given to or attempt to discharge the original attorneys. The court recognized the rule that the client has a right to revoke the employment of his attorney at will with or without cause, but in deciding that the attorneys were entitled to the interest in the property which by contract they had acquired held that there is an exception where in the contract of employment the attorney acquires an interest in property.
In Louque v. Dejan, 129 La. 519, 56 So. 427 (1911), the court distinguished between the contract of employment where an interest in property is taken and the contract of employment where there is a contingent fee to be paid out of money which may or may not be recovered. The court said:
"From the foregoing, we deduce that the test is where there is a mandate with an interest; the agent or attorney acquires a vested right, of which he cannot be diverted by his discharge.
"Of course, if plaintiff had acquired an interest, he is entitled to the amount claimed. But, if he was not vested with an interest, it was a mandate which could be terminated, as was done in this instance.

*375 "The mandate in question extended to and included only the amount which the attorney was to receive in compensation. That amount was to become his on collecting the fund. He had no ownership in the thing.
* * * * * *
"Certainly, if the client had the right to dismiss the suit altogether, causing the destruction of the eventual res, he certainly had the lesser right to contract the res by employing another attorney, leaving to the first the right to recover for his services actually performed.
"Plaintiff is not entitled to a fee for services rendered after the discharge."
But the foregoing is not dispositive of the case before us because the Louque case was decided with reference to facts which developed before the passage of Act 124 of 1906, the source of LSA-R.S. 37:218. This provides as follows:
"By written contracts signed by the client, attorneys at law may acquire as their fee an interest in the subject matter of the suit, proposed suit, or claim in the prosecution or defense of which they are employed, whether the suit or claim be for money or for property. In such a contract for employment, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file the suit or claim. Either party to the contract may, at any time, file it with the clerk of the district court in which the suit is pending or is to be brought and have an original or certified copy made and served by registered or certified mail on the opposing party. After such service, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client without the written consent of the other is null and void and the suit or claim shall be proceeded with as if no such settlement or discontinuance had been made."
Furthermore, the Louque case does not appear to involve a contract in which the client specifically agreed that the suit could not be compromised without the consent of the lawyer as is the situation in the instant case. Since there was no statutory authority for such a contractual provision at the time of the Louque situation such a provision would probably not have been enforcible in any event.
The most persuasive case cited by appellant is the Carlson case where the attorney was employed on a contingent fee contract similar to the one in the instant case. The client became dissatisfied with the attorney's services and dismissed him. The attorney filed an intervention in the client's pending suit seeking enforcement of his contract and the district court, finding that the contract was valid in accordance with R.S. 37:218, held that the attorney was not entitled to his one-third interest but was limited to recovery on a quantum meruit basis. The Court of Appeals held as follows:
". . . A client may discharge his attorney, even a contingent fee attorney, and the attorney may not then insist that the attorney-client relationship continues after discharge. But the power to discharge, and the fact of discharge, are not determinative of the discharged attorney's rights under a Louisiana statutory contingent fee contract. The lawyer's rights under such a contract turn at least in part on whether the lawyer's performance gives the client good cause for dismissal or whether the dismissal frustrates what had been satisfactory performance of the attorney's obligations."
The Court also held in a footnote that the attorney was not precluded from enforcing the contract against the client because of his failure to file the contract in the district court prior to the time he was dismissed by the client. The case of Robinson *376 v. Hunt, 211 La. 1019, 31 So.2d 197 (1946) does seem to support the Court's decision in that regard.
But the main thrust of the case seems to be that the attorney is entitled to his full contingent fee and is not relegated to a quantum meruit fee unless the client can show that he was dismissed for good cause.
While it might be said that the Carlson case is not controlling on this Court, we note that it was cited and followed by the Third Circuit in Guilbeau v. Fireman's Fund Insurance Company, 293 So.2d 216 (La.App.3rd Cir. 1974), where the Court specifically found that the client had good cause to dismiss the attorney.
The Court held that the statute envisions an earned fee when its permits attorneys to acquire an interest in the subject matter of the suit as a fee. The Court said:
". . . It would not be reasonable to assume the legislature intended that the execution and filing of a contingency fee contract would assure the attorney of a full one-third interest, irrespective of the amount of work actually done on behalf of his client."
The more recent cases have taken the view that a contract between the attorney and client is a mandate revokable by the principal at any time with or without cause, and that the contract is at an end upon the discharge of the attorney. Such a discharge and revocation by the client entitles the attorney to be compensated for services rendered on the basis of quantum meruit, Wright v. Fontana, 290 So.2d 449 (La.App.2nd Cir. 1974); Kramer v. Graham, 272 So.2d 716 (La.App.3rd Cir. 1973); Cabral v. Heitkamp, 252 So.2d 353 (La.App.4th Cir. 1971). But in none of these cases did the Court face the issue squarely as we must do here as to whether the attorney who is discharged without cause is relegated to the quantum meruit fee and is precluded from his contractual contingent fee.
In solving the problem, we have resolved at the outset that the question of good cause for discharging the attorney raised in the Carlson and Guilbeau cases is one that is easily oversimplified. The relation between attorney and client is a close personal relationship which is far more complex than simply whether the attorney is performing his professional responsibilities and obligations in the proper manner. During the course of handling the client's case the attorney must maintain communications with the client, must be available to the client so as to furnish and to secure information, and must endeavor to maintain the trust and confidence of the client during the handling of the case. The client is frequently impatient with the progress and anxious about the outcome of the case and is often plagued by economic anxieties, especially in the typical personal injury tort claim. The personalities of the attorney and client, especially as they are revealed to each other, frequently play a much greater part in the relationship between the parties than the professional activities of the attorney in the handling of the case.
For instance, in the instant case, we have found that appellant's handling of his client's case from a professional point of view was characterized by competence and diligence. From that point of view alone Smith had no cause whatsoever for discharging appellant. But it does appear that there was a breakdown of communications between appellant and his client. Smith did not understand why the case was taking so long to come to trial, he was undergoing financial hardship, the situation was not being explained by appellant to his satisfaction, and when the trial of his case was finally scheduled for November, 1972, only to be continued Smith blew up and discharged appellant. Appellant's own testimony reveals that his relationship to the client was already precarious when the case was continued. He testified that he hoped Smith would understand that the failure was with the system of docketing cases and not with him. We perceive from appellant's testimony that even he recognized that Smith had good reasons to *377 become irritated and that his reaction in discharging the only person in the system with whom he was in contact was a typical and predictable human reaction.
When all of these circumstances are considered we must conclude that in a sense Smith had good cause for discharging appellant, and we might thereby rationalize our conclusion that appellant can recover only on a quantum meruit basis. We would distinguish the circumstances of this case from a situation where an attorney worked diligently on a case and on the eve of a settlement being confected the client fraudulently conspired with a second attorney to come in and take over the case for perhaps a lower contingent fee percentage than the first attorney had. We would never condone wrongdoing on the part of the client, but we do not find that Smith's behavior was characterized by wrongdoing but more so by human foibles and perhaps weaknesses, and some ignorance in his reaction to treatment by appellant.
Were we to hold otherwise the result would be manifestly unjust and would redound to the disrepute not only of the courts but also the practicing Bar in the eyes of the general public. Here we have a personal injury claimant who settled his case for $25,000 of which $6,000 was paid to the compensation carrier. The contingent fee contract of the second attorney called for 40% of Smith's recovery, or $7,600. Appellant would have us award to him 331/3% of Smith's $19,000, or a little over $5,000 net to Smith. Considering the circumstances which we have already discussed, this result would be unconscionable. In addition to all of the other consideration which we mentioned we cannot believe that a man such as Smith should be charged with the knowledge that his discharging appellant would prove to be so costly.
Finally, we are persuaded by the fact that appellant did not avail himself of the protection which is afforded to an attorney by R.S. 37:218. This statute quoted above consists of three separate parts. First, it authorizes an attorney to enter into a contingent fee contract with the client. In other words, it makes such a contingent fee contract a legal contract. See Dickerson v. Scholvin, 261 So.2d 110 (La.App.4th Cir. 1972). Second, the statute provides that the contract may stipulate that the suit cannot be settled, compromised, discontinued or otherwise disposed of by either party without the consent of the other. The contract between appellant and his client had the earmarks of the statute up to that point, but there is a third part of the statute which appellant did not choose to follow and which in our view was his undoing. That part of the statute provides that either party may file the contract in the district court and have the contract, or a copy, served on the opposing party. It further provides that if this procedure is carried out any settlement of the suit is null and void. Had appellant followed this procedure the original defendants would never have paid $25,000 to Smith and the compensation carrier and settled the case without recognizing appellant's claim for a fee. Defendants made a perfectly valid settlement of the claim and obtained a full and complete release. 40% of Smith's recovery went to his second attorney, Mr. Waltzer, and there are no pleadings in these proceedings to provide a basis for any of that money being refunded to Smith or shared with appellant at this time. We are thus faced with a choice of Smith paying full fees to two different attorneys or appellant recovering something less than a full fee which he could have recovered had the statutory provisions been followed. We must conclude under the circumstances that appellant, the attorney, and not the client, must pay the consequences. Appellant was charged with the knowledge of the statute and its provisions. He was in a position to prevent the result from coming about. He failed to do so and it would be grossly unfair now to make the client pay for something which the attorney could have avoided in the first instance.
*378 Having concluded that appellant is not entitled to his contingent fee of one-third of Smith's recovery, we now turn to the method used by the trial judge in arriving at appellant's fee.
It seems clear that the number of hours spent by appellant on the case would at best be a factor to be considered but does not alone determine the amount of the fee. Appellant and his expert both testified that hours are not considered in the handling of a personal injury tort claim. When this representation was undertaken by appellant only the potential recovery was considered with an arbitrary percentage of recovery being the fee without regard to the number of hours that might be spent in the handling of the case. To say that appellant's quantum meruit fee is based on the hours he spent could lead to the absurd result that if the trial judge had found that appellant spent 233 hours on the case his quantum meruit fee would have been far in excess of the maximum fee he could have earned under his contract.
The phrase, quantum meruit, means as much as he deserved. This in turn encompasses far more than simply the hours spent by the attorney on his client's case. It involves the ultimate results obtained as well as the particular benefit to the case derived for each unit of time devoted to the case. For instance, it is conceivable that a single hour of research might be far more valuable to the overall case than the other weeks of research which were spent, a single interview with one witness may be more important than the balance of a painstaking investigation, or a single telephone call might have the immediate effect of promoting a favorable settlement where many hours of negotiation have otherwise failed. When appellant was discharged by Smith he had already contributed a great deal to bringing about an eventual settlement of the case. There is no evidence in the record as to exactly what efforts were expended, how much time was devoted or what services were performed by Waltzer after he took over the case until it was settled, and consequently it is impossible to determine whose efforts, appellant's or Waltzer's, contributed what proportion of the overall total effort which brought about a conclusion of Smith's case. In order for a proper quantum meruit fee to be arrived at for appellant there should be an evidentiary hearing in which the court should take the testimony of both attorneys, evaluate the quality and effectiveness of the services performed by each, allocate a percentage of the total to appellant and fix his fee based on that percentage of the maximum he could have recovered in this case, being one-third of $19,000. In making that evaluation and allocation the trial judge should not confine his inquiry to the number of hours spent but should carefully evaluate the quality of the work performed and the effect that each attorney's work had on the ultimate settlement of the case.
We recognize that the ultimate outcome of this case could work to the distinct disadvantage of Walter Smith who may find himself liable for total attorneys' fees which are disproportionate to the amount of his settlement. Because of the posture of the case when it was submitted to the trial court true justice could not be done. There were three individuals, the two attorneys and plaintiff involved in the problem, but only plaintiff-appellee and intervenor-appellant were before the Court. An ideal solution could be reached if, at the trial on remand, both attorneys were parties so that the fee could be apportioned between them based upon the production effort each contributed to the ultimate settlement of the claim.
We regret that it is necessary for this Court to decide a case of this nature. We recognize that the ramifications of our opinion extend far beyond the narrow issue of the amount of appellant's fee. Perhaps the organized Bar should have machinery available for the mandatory arbitration of such matters. In the long run, it would certainly be beneficial to the public *379 image of the Bar if a case such as this could be disposed of in some way other than by litigation.
The judgment appealed from is reversed and set aside and the case is remanded to the trial court for an evidentiary hearing and a judgment consistent with the views we have expressed. Assessment of costs is to await the outcome of further proceedings.
Reversed and remanded.