353 So.2d 732 (1977)
Fred SAUCIER
v.
HAYES DAIRY PRODUCTS, INC. and the Hartford Group Insurance Company.
No. 8104.
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1977.
Writ Granted February 24, 1978.
*733 Emile L. Turner, Jr., New Orleans, for plaintiff-appellee.
George W. Reese, New Orleans, intervenor-appellant-in pro. per.
Before SAMUEL, GULOTTA and BOUTALL, JJ.
SAMUEL, Judge.
Plaintiff was injured in an automobile accident. He employed George W. Reese, an attorney at law, as his attorney and executed a written undated contract of employment with him. The contract included assignment of a one-third interest in plaintiff's claim to Mr. Reese as his fee and prohibited the settlement, compromise, dismissal, or discontinuance of the matter without the written consent of both parties.
On January 25, 1972, suit was filed on plaintiff's behalf, and on January 15, 1975 plaintiff dismissed Mr. Reese as his attorney and retained other counsel. On January 31, 1975 Mr. Reese filed the employment contract with the clerk of the trial court and served certified copies on all parties in the litigation in accordance with R.S. 37:218. He also filed a petition of intervention to collect his contingent interest from any award to plaintiff. Plaintiff answered the intervention, averring that if he had breached his contract with intervenor the breach was for cause.
Prior to trial of the main demand, plaintiff entered into a compromise with the original defendants[1] for $75,000. Following trial of the intervention, judgment was rendered in favor of intervenor based on quantum meruit in the amount of $3,000 for legal services plus costs and medical expenses incurred by him on behalf of plaintiff.[2] Intervenor has appealed.
In this court intervenor contends: (1) he is entitled to one-third of the $75,000 settlement as his contingent fee; (2) his contractual interest could be changed to quantum meruit only if his client (the plaintiff) had cause to terminate the contract; and (3) the alleged cause for terminating the contract was not factually pleaded so that testimony with regard to the cause was incorrectly admitted as an improper extension of the pleadings. We find it unnecessary to consider the third contention relative to procedure because, even taking into consideration all of the evidence introduced as to cause, our conclusion is that no good cause has been shown by the plaintiff.
Plaintiff testified he saw intervenor four or five times prior to dismissing him by letter on January 15, 1975. He thereafter received a letter from intervenor by which the latter expressed his willingness to represent him further. Plaintiff knew intervenor had paid a bill to one of the doctors treating him in an amount between $700 and $900, together with any court costs which had been incurred in the suit. Plaintiff testified he became dissatisfied with one of the doctors to whom he had been sent by intervenor, after which intervenor referred him to another doctor. He was aware the case had been continued on several occasions for medical reasons. Over intervenor's timely objection, plaintiff testified he discharged intervenor because he was dissatisfied with one of the doctors to whom he had been sent and because intervenor, after three years of representation, informed him that there was only $25,000 of liability insurance coverage available. He then discharged intervenor, and engaged another attorney who found there was $50,000 in liability insurance together with an additional $5,000 coverage for property damage.
Robert M. Johnson, the attorney for the original defendants in the case, testified he dealt with intervenor from the inception of the suit and had maintained a time sheet showing the amount of time expended by him. He stated he spent 27 hours on the *734 case much of which was consumed by various letters, conferences, and telephone conversations with plaintiff's attorney, including depositions and settlement conferences. He established $50 an hour as a standard fee charged a corporate defendant but indicated that in this matter he had charged $40 per hour.
Ermilee Figuroa, intervenor's legal secretary and a niece by marriage of plaintiff, testified relative to the cost expended by intervenor and to the extensive interviews she had with plaintiff and his wife either by telephone or in person when they came to intervenor's office with regard to plaintiff's suit. All of these conversations were relayed to intervenor in connection with his work on the case.
Intervenor testified he did not keep time sheets on contingent fee contract cases because his fee, being based upon a percentage of recovery, renders the amount of expended time immaterial. He established a substantial amount of correspondence on his part, together with interviews with his client, telephone calls, and supervision of the medical treatment rendered by physicians to the plaintiff. He had numerous conferences with plaintiff's doctors about plaintiff's condition and secured reports and bills covering medical services, drugs, surgical equipment and hospital reports. The largest amount of his time was spent in reviewing and analyzing the medical information which came to him on a regular basis. He further testified, and this is amply substantiated by the evidence, that plaintiff's injuries did not appear to be serious initially but that the condition deteriorated over a period of time requiring extensive and previously unexpected medical treatment and consultation. The record also clearly indicates intervenor's close supervision of the medical information available to him and his refraining from trying the case while it was under his supervision resulted in a substantial increase in the amount which plaintiff eventually recovered over what he would have recovered had the suit been settled or tried prior to full development of the injuries.
Intervenor admitted he indicated to plaintiff the insurance coverage was only $25,000, but he told plaintiff this was not a significant factor because the defendant corporation was solvent and able to respond in damages over the amount of any insurance coverage it might have. The lowest figure which plaintiff authorized intervenor to consider was $150,000, which intervenor felt was an unrealistic settlement figure.
Plaintiff's wife testified she went with her husband to intervenor's office initially and thereafter with regard to the progress of his case and had several telephone conversations with him. Her husband did not feel intervenor was handling the case properly because he should have talked to the doctors more often. She testified intervenor communicated total insurance coverage of $25,000, but admitted intervenor did not ask or encourage her husband to accept this amount of money. She stated there was no personality conflict or communication breakdown between intervenor and her husband, and she admitted she did not know her husband's reason for discharging intervenor. She also admitted intervenor told her and her husband the defendants could pay any amount for which they might be cast in judgment irrespective of the amount of insurance available to them.
The attorney-client contract in suit complies with all of the provisions of R.S. 37:218, which then provided:
"By written contracts signed by the client, attorneys at law may acquire as their fee an interest in the subject matter of the suit, proposed suit, or claim in the prosecution or defense of which they are employed, whether the suit or claim be for money or for property. In such a contract for employment, it may be stipulated that neither the attorney nor the client may, without the written consent of the other, settle, compromise, release, discontinue or otherwise dispose of the suit or claim. Either party to the contract may, at any time, file it with the clerk of the district court in which the suit is pending or is to be brought and have an original or certified copy made *735 and served by registered or certified mail on the opposing party. After such service, any settlement, compromise, discontinuance, or other disposition made of the suit or claim by either the attorney or the client without the written consent of the other is null and void and the suit or claim shall be proceeded with as if no such settlement or discontinuance had been made." LSA-R.S. 37:218.
Thus, we are required to consider the question of whether, and under what circumstances, Louisiana courts have enforced the literal provisions of R.S. 37:218.
Recent cases have implied, but did not hold, that irrespective of compliance with the provisions of R.S. 37:218 the attorney-client relationship is a mandate revocable at the discretion of the client pursuant to Civil Code Article 3028. However, research into the application of this statute by the courts of Louisiana shows that a contract which is drawn in total compliance with this statute will be enforced if the attorney has performed his obligations thereunder in a satisfactory manner. Numerous cases have so held.[3]
Other cases have recognized the enforceability of a contract drawn pursuant to R.S. 37:218, but have refused to enforce the particular contract before the court on the basis that some technical requirement was not met. Such contracts have not been enforced when the contract itself did not prohibit the client's dismissal of the suit without the attorney's consent.[4] Other cases have refused to enforce the contract where it was not recorded in accordance with the statutory provisions.[5] Such contracts also have not been enforced against a client seeking to dismiss a suit, since the statute does not allow prohibition of dismissal.[6]
The other important condition for enforcement of a contract drawn in strict conformity with R.S. 37:218 is that the attorney perform his services as contracted. A contract pursuant to R.S. 37:218 was not enforced in Guilbeau v. Fireman's Fund Insurance Company,[7] in which the attorney performed no services for two years with the exception of filing the original suit. The court there relied on the doctrine of quantum meruit to compensate the attorney for services he did perform. In Oil Purchasers, Inc. v. Kuehling,[8] the Supreme Court did not enforce such a contract in its totality, because performance was not completed because of the attorney's death. It is interesting to note that court looked on the quantum meruit remedy with disfavor and instead used the civil law actio de in rem verso to determine the amount of compensation due for the services of the deceased attorney. It is important to note such contracts have been enforced even when performance has not been complete in cases where the client has made completion of performance impossible.[9]
The apparent misunderstanding that an attorney cannot receive the full amount of his percentage fee stipulated in the contract *736 drawn in compliance with R.S. 37:218 even though he has performed seems to have derived from a group of cases in which the courts have awarded attorney's fees where there was no contract involved, where there was an oral contract, or where the attorney chose to sue in quantum meruit.[10] This misunderstanding seems to have been fostered by misquotation in at least two decisions[11] of the Supreme Court's language in Succession of Carbajal.[12] In Carbajal, the Supreme Court stated attorney-client contracts were terminable at the will of the client prior to the passage of Act 124 of 1906, the predecessor of R.S. 37:218. However, the misquotation of the Carbajal language omitted reference to the court's statement that attorney-client relationship was terminable at the will of the client prior to the 1906 statute, thereby causing the incorrect quotations to imply that all attorney-client contracts are so terminable, with the attorney to be compensated only on quantum meruit.
We construe the jurisprudence to be that an attorney-client contingent fee contract drawn and executed in strict compliance with R.S. 37-218 may not be terminated at the will of the client in the absence of cause such as nonperformance or improper performance by the attorney.[13]
In the present case the record fully supports an award to intervenor of his contractual one-third of the settlement obtained by the plaintiff. There is no evidence intervenor did not perform satisfactorily. Numerous documents introduced in evidence substantiate intervenor's contention he was in constant contact with plaintiff's doctors, and there is no question that in his relationship with plaintiff full communication was maintained.[14] The delay from the date of the accident to the settlement of plaintiff's case was not the result of intervenor's failure to exercise due diligence, but resulted from the deteriorating nature of plaintiff's physical condition and the necessity for intervenor to obtain complete medical proof of the extent of plaintiff's injuries. It is clear intervenor's continuous efforts in building up plaintiff's case with medical evidence while he represented plaintiff was the main factor which allowed plaintiff to settle the case for $75,000 instead of a much lesser amount. Both plaintiff and his wife acknowledged they were familiar with intervenor's efforts. Intervenor's understanding that insurance coverage was $25,000 when in fact it was $50,000 is not relevant in this case because defendants were able to stand in judgment for a larger amount, intervenor so advised plaintiff, and intervenor made no attempt to force plaintiff to accept the settlement based on the lower coverage amount. In addition, the additional coverage appears to have been discovered only after intervenor was discharged, so that this factor could not have been part of plaintiff's reason for discharging intervenor.
Intervenor had a valid contingent fee contract executed pursuant to R.S. 37:218 and performed his duties thereunder competently. His total compliance with his contractual duties was prevented by plaintiff's discharge of intervenor without good cause, and plaintiff cannot take advantage of his own wrong to deprive intervenor of a fee competently earned. Therefore, we hold intervenor is entitled to his contractual one-third of the settlement reached between plaintiff and the original defendants.
*737 For the reasons assigned, the judgment appealed from is amended so as to increase the amount awarded as an attorney's fee in favor of intervenor, George W. Reese, and against the original plaintiff and defendant in reconvention, Fred Saucier, and the original defendants, Hayes Dairy Products, Inc. and The Hartford Group Insurance Company, from the sum of $3,000 to the sum of $25,000. As thus amended, and in all other respects, the judgment appealed from is affirmed.
AMENDED AND AFFIRMED.
NOTES
[1] Hayes Dairy Products, Inc. and The Hartford Group Insurance Company.
[2] Intervenor spent $75 on court costs and $916 for medical bills on behalf of his client. The judgment appealed from is against plaintiff and the two original defendants and is to be paid from the $75,000 compromise settlement.
[3] Acadian Production Corp. of La. v. Savanna Corp., 226 La. 849, 77 So.2d 417; Robinson v. Hunt, 211 La. 1019, 31 So.2d 197; Hope v. Madison, 194 La. 337, 193 So. 666; Succession of Jones, 193 La. 360, 190 So. 581; United Gas Public Service Co. v. Christian, 186 La. 689, 173 So. 174; Husk v. Blancand, 155 La. 816, 99 So. 610; Stiles v. Bruton, 134 La. 523, 64 So. 399; Andirac v. Richardson, 125 La. 883, 51 So. 1024; see also strong dictum in Succession of Vlaho, La.App., 140 So.2d 226, stating that while R.S. 37:218 is strictly construed, it will be enforced if there is full compliance with its provisions. See also Due v. Due, La.App., 331 So.2d 858, at 860.
[4] Tennant v. Russell, 214 La. 1046, 39 So.2d 726; Succession of Rice, 147 La. 834, 86 So. 282; Succession of Carbajal, 139 La. 481, 71 So. 774; Dickerson v. Scholvin, La.App., 261 So.2d 110.
[5] See Smith v. Westside Transit Lines, Inc., La.App., 313 So.2d 371; Woodley v. Robinson, La.App., 100 So.2d 255.
[6] Succession of Vlaho, supra, note 3.
[7] La.App., 293 So.2d 216.
[8] La., 334 So.2d 420.
[9] D'Avricourt v. Seeger, 169 La. 620, 125 So. 735; Lytle v. Commercial Insurance Co., of Newark, N. J., La.App., 285 So.2d 289; Doucet v. Standard Supply & Hardware Company, La. App., 250 So.2d 549.
[10] Aucoin v. Williams, La.App., 295 So.2d 868; Wright v. Fontana, La.App., 290 So.2d 449; Barranger, Barranger and Jones v. Cromp, La. App., 286 So.2d 474; Lynch v. Burglass, La. App., 286 So.2d 170; Kramer v. Graham, La. App., 272 So.2d 716; Cabral v. Heitkamp, La. App., 252 So.2d 353; Inman v. Gonzales, La. App., 89 So.2d 914.
[11] See Kramer v. Graham, supra, note 10; Inman v. Gonzales, supra, note 10.
[12] Supra, note 4.
[13] This result was reached by the Federal Courts in attempting to construe Louisiana law in Carlson v. Nopal Lines, 460 F.2d 1209 (5th Cir. 1972), which itself was followed by the Louisiana case of Guilbeau v. Fireman's Fund Insurance Company, supra, note 7.
[14] See dictum in Smith v. Westside Transit Lines, Inc., supra, note 5.