961 So.2d 1288 (2007)
Rejohnna Brown MITCHELL
v.
Harolyn BRADFORD, Jackie Blouin, Annastasia Harden, Yvonne White, Carla Campbell, Sharon Morton.
Rejohnna Brown Mitchell
v.
Gretchen Bradford.
Rejohnna Brown Mitchell
v.
Marian Madison.
Nos. 2006-CA-1496, 2006-CA-1497, 2006-CA-1519.
Court of Appeal of Louisiana, Fourth Circuit.
June 20, 2007.
Rejohnna B. Mitchell, Jackson, MS, for Plaintiff/Appellee.
Rickey R. Hudson, Monroe, LA, for Defendants/Appellants.
*1289 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge MICHAEL E. KIRBY, Judge ROLAND L. BELSOME).
MICHAEL E. KIRBY, Judge.
The Defendants/Appellants appeal the granting of a default judgment in appellee's favor concerning attorney's fees. We vacate the Default Judgment for failure to make a prima facie case and remand.
STATEMENT OF THE FACTS
On or about March 29, 2000, appellants made an initial office visit to appellee regarding their personal injury claims against the makers of the diet drug Phen-fen, manufactured by American Home Products. Appellants subsequently signed a Contingency Agreement with appellee on November 2, 2000, which in paragraph one states: "In the event that attorney is able to affect a settlement or the claim and/or claims without the necessity of filing suit, the attorney is to receive as compensation for his services . . . 40% of whatever amount is collected." Paragraph five states: "Expenses are to be the responsibility of the client and are to be deducted from the client's portion of any and all monies recovered." While nine clients signed the retainer agreement, only the eight named clients have filed this appeal. The eight named clients hereinafter will be collectively referred to as the "Phen-fen clients."
From October 27, 2000 until December 5, 2000, appellee secured medical records and prescription records for the Phen-fen clients, which indicated their ingestion of the diet drug and the resulting medical damages. In January 2001, appellee associated with the law firm of Grenfell, Sledge & Stevens, L.L.C. (hereinafter referred to as "Grenfell") located in Jackson, Mississippi. The record indicates that Grenfell sent a letter to appellee requesting her to have the Phen-fen clients sign and return a confidential release, indemnity, assignment and settlement disclosure forms. Appellee subsequently met with all of the Phen-fen clients and had them sign the Fen-Phen releases which she returned to Grenfell in Mississippi. The Phen-fen releases show the clients' choice to waive their right to pursue their cases before a judge or jury in favor of allowing the outcome to be determined by a court-appointed Special Master. The signed Phen-fen releases were then forwarded by Grenfell to the law firms of Michael T. Gallagher and Tim K. Goss, both located in Dallas, Texas. The signed Phen-fen releases were then submitted to the Special Master on behalf of appellee and the Phen-fen clients.
From January through July 2001 appellee made arrangements for each client to have an echocardiogram test. Appellee forwarded the test results to the Special Master.
In response to the signed Phen-fen releases, a settlement offer and check from the Settlement Fund made out to Marian Madison for $322,000 was mailed to Grenfell. Grenfell then forwarded the settlement offer to appellee on August 16, 2001. This offer was rejected by Mrs. Madison after consultation with the appellee. Appellee also informed Grenfell at the same time that she was rejecting all of the settlements for her clients which had been obtained by Grenfell. There were disagreements that ensued between appellee and Grenfell in August and September 2001. Each of the Phen-fen clients had been offered a settlement of $72,264, with the exception of Mrs. Madison, who was to receive $322,000. Grenfell returned a letter to appellee confirming the rejection of the settlement offers and cited Mississippi case law which entitled them to an attorney fees lien. This was done following a *1290 letter that appellee sent to Grenfell on September 6, 2001 instructing them that appellee was terminating her association with them.
Approximately 18 months later, appellee communicated with Dan Homolka, an attorney from Minnesota, who then filed a civil suit on behalf of the Phen-fen clients in Minnesota's 4th Judicial District Court for Hennepin County (Case No. 03-4147) in March 2003. The case was dismissed without prejudice when American Home Products Corp. produced evidence of the releases from appellants and proof that their claims were still pending in the Diet Drug Settlement Fund.
The professional relationship between appellee and Grenfell continued to deteriorate, resulting in appellee filing a lawsuit against Grenfell in First Judicial District Court of Hinds County, Mississippi on March 31, 2004. Appellee sued for release of her clients' claims and alleged conversion and breach of contract. In response to this lawsuit, Grenfell filed a complaint for declaratory judgment against the appellee in Hinds County (No. G-2004-531) on April 2, 2004. In this suit, Grenfell requested that the court enter an order finding the Phen-fen contractual agreement and settlement/releases signed by the Phen-fen clients be enforced and requiring payment of damages and the disbursement of the settlement proceedings. As a result, a consent order was entered interpleading One Hundred, Thirty-Five Thousand and Eighty-Six Dollars ($135,086) with the funds being held in the registry of the Mississippi Chancery Court until further orders of that court.
On November 9, 2004 the eight Phen-fen clients who are parties to this appeal filed a motion to intervene in the Mississippi declaratory judgment action, alleging their contingency fee contract agreement with appellee was unenforceable. The Phen-fen clients allege that their relationship with appellee terminated on August 6, 2003 due to appellee's breach of the contingency fee contract and/or appellee's failure to notify them in a timely manner when their settlement proceeds became available. To this date, appellee appears to be representing appellants in the aforementioned litigation against Grenfell that is still pending in the Hinds County, Mississippi First Judicial District Circuit Court. With respect to the still-pending declaratory judgment/interpleader action, the appellee subsequently urged a successful motion which resulted in the Mississippi Chancery Court granting a Motion to Dismiss for Lack of Subject Matter Jurisdiction. The Mississippi Court ordered the transfer of the entire file of Civil Action No. G-2004-531 to the Civil District Court for the Parish of Orleans, Louisiana on November 26, 2006.
PROCEDURAL HISTORY
Appellee filed a petition on July 16, 2004 in Civil District Court for the Parish of Orleans (No. 2004-10350, Division "F") for debt owed on her contingency fee contracts with the Phen-fen clients. Appellee filed a motion for preliminary default judgment against the Phen-fen clients on April 25, 2006. The Orleans Parish Civil District Court granted the preliminary default judgment against the Phen-fen clients on September 6, 2006, due to their failure to file an answer or other responsive pleadings in a timely manner. The default judgments were as follows: Harolyn M. Bradforde, $131,000.00; Jackie Blun, $30,905.60; Yvonne White, $131,000.00; Sharon Morton, $30,905.60; Annastasia Harden, $148,000.00; Carla Campbell, $30,905.60; Gretchen Bradford, $131,000.00; Marian B. Madison, $131,00.00.
Pursuant to Louisiana Code of Civil Procedure articles 2083 and 2121, appellants *1291 filed notice of appeal to be taken from the allegedly defective default judgment entered into the trial court record of this matter.
ASSIGNMENTS OF ERROR
Appellants have assigned two errors on the part of the trial court. First, it is alleged that the court committed error in granting the default judgment in an amount that exceeds the demand prayed for in the petition and that also exceeds the damage proven by competent and admissible evidence. Secondly, they contend the court below erred in granting the default judgment after appellee failed to sufficiently establish a prima facie case in support of her demands as required pursuant to La. C.C.P. art. 1702(A) and the controlling case law.
LEGAL ANALYSIS
A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. La. C.C.P art. 1702(A); see also Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254 (La. 1993). When the demand is based on a conventional obligation, affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case shall be admissible, self-authenticating, and sufficient proof of such demand. La. C.C.P. art. 1702(B)(1). A prima facie case is established when the plaintiff proves the essential allegations of the petition, with competent evidence, to the same extent as if the allegations had been specifically denied. Discover Bank v. Peters, 38,366 (La. App. 2 Cir. 4/14/04), 870 So.2d 602; Zahn v. Hibernia Nat. Bank, 94-204 (La.App. 5 Cir. 11/16/94), 646 So.2d 1149; Morris v. Southern American Ins. Co., 550 So.2d 828 (La.App. 2d Cir.1989).
The evidence submitted by appellee with her petition lacks sufficiency for establishing a prima facie case in support of her demands. In the trial record there is a Diet Drugs II Qualified Settlement Fund Release and Distribution Sheet which lists one of the appellants, Marian Madison as represented by both Grenfell and Mitchell as attorneys. In addition, the settlement offer is as follows: $322,000.000 total gross settlement, less attorney fee of $128,800.00, less expense of $135.12, for a net amount to the client of $193,064.88. Appellee purports to prove that the appellant received a settlement award which would be subject to some claim pursuant to the contingency fee contracts at issue. This evidence is insufficient because first, the document signed by Marion Madison clearly indicates she rejected the offer. Secondly, the record contains only a copy of the front of the check made out to Marion Madison and dated August 8, 2001. Thirdly, Mr. Cothern's letter dated October 1, 2003, indicates the check for $193,064.88 was sent to Grenfell in 2001 but that the check never cleared the Diet drugs II account. Fourthly, even if the settlement was later accepted (for which no evidence exists in the record), the settlement clearly indicates that the attorney's fees ($128,800.00) had been deducted from the final settlement amount before the check was tendered to the appellant Ms. Madison. Appellee fails to present evidence that any of the appellants received a settlement that included the attorneys' fees for which she is petitioning. In addition, the only evidence regarding a settlement is in regard to Ms. Madison; no evidence of settlement funds dispersed to the other clients is available in the record. The record did not contain sufficient competent evidence in terms of the appellants receiving settlement funds that included attorneys' fees for which the appellee sought in the default judgment. Appellee's letter of November 5, 2003 to Michael Gallagher only provides hearsay evidence of settlements for the Phen-fen clients, *1292 which were rejected by the appellee. In addition, appellee sought significantly higher settlement amounts in the same letter. Appellee failed to produce an authentic disbursement sheet proving the existence and precise amount of any settlement funds allegedly obtained by any of the other Phen-fen clients.
At the confirmation hearing appellee offered no more pertinent evidence regarding the disbursement of funds other than that stated in paragraph nine of her petition: "On information and belief that disbursement of the funds subject to the settlement agreement was made to your defendants on or about June 13, 2004." Appellee's assertion that the appellants received a disbursement is not sufficient evidence to establish the elements of a prima facie case. A plaintiff who knows of a writing that is the principal basis for her claims must produce it when it is the best evidence of the facts at issue. See Ascension Builders, Inc. v. Jumonville, 262 La. 519, 263 So.2d 875, 878 (La.1972).
Additionally, appellants argue that the trial court failed to make the required inquiry to determine the reasonableness of the amount of attorneys fees awarded to appellee in the instant case. There is merit to this argument. Appellee sought the assistance of counsel from Grenfell, Sledge & Stevens, POLLC, located in Jackson, Mississippi to procure a successful settlement for her clients. However, appellee made no mention of the then pending and on-going declaratory judgment/interpleader litigation in Mississippi involving inter alia, the appellee and out-of-state attorneys regarding attorney fees for settlement of the Phen-fen clients. Appellee also failed to inform the court that when she filed the instant action, Grenfell et al. had already asserted a lien on the same Fen-Phen settlement proceeds that are at issue in the instant case. Appellee did not attempt to prove that the attorney's fees she demanded in her petition were reasonable and/or that she earned the legal fees at issue herein, in light of the fact that appellants at some point discharged her and hired new counsel before final settlement of their cases.
Louisiana courts have given great deference to clients in choosing their attorney for representation. "The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists." La. State Bar Asss'n v. Bosworth, 481 So.2d 567, 571 (La.1986), citing Matter of McGlothlen, 99 Wash.2d 515, 663 P.2d 1330 (1983). "The appointment of an attorney is a mandate revocable at the client's will." Sanders v. Federal Apartments Ltd. Partnership, 31,562, p. 4 (La. App. 2 Cir 2/24/99), 733 So.2d 45, 47, citing Keene v. Reggie, 96-740 (La.App. 3 Cir. 10/22/97), 701 So.2d 720. The second circuit even held that a client had discharged his initial attorney while the discharged attorney remained the attorney of record. Johnson v. Insurance Co. of North America, 27,847 (La.App. 2 Cir. 1/24/96), 666 So.2d 1286.
The Phen-fen clients allege that their relationship with appellee terminated on August 6, 2003 due to appellee's breach of the contingency fee contract and/or appellee's failure to notify them in a timely manner when their settlement proceeds became available. The trial record in the appellee's communication log indicates that on April 29, 2004 she received a letter from Grenfell stating she was no longer representing the appellants in this appeal. While the appellants and appellee differ on the exact date of dismissal, both agree that at some point the appellants no longer wanted to be represented by the appellee.
In a similar situation, the Louisiana Supreme Court in Saucier examined a case in which a client discharged his attorney *1293 before the case was settled. Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978). The discharged attorney had been retained under a contingency fee contract. The client then retained a second attorney under a second contingency fee contract. The Court held that only one fee should be paid by the client and that fee was to be divided between the two attorneys on a quantum meruit basis. Subsequent to the Saucier decision, courts reasoned, in accordance with Rule 1.5(a) of the Rules of Professional Conduct, the following factors are to be examined to determine the amount of an attorney's recovery:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.
In Smith v. Westside Transit Lines, Inc., this court held that, under a quantum meruit analysis, the court should consider a number of factors when an attorney discharged for cause seeks compensation for services rendered. 313 So.2d 371, 376 (La. App. 4th Cir.1975). The court noted that quantum meruit means "as much as he deserves;" therefore the fact finder should look to the ultimate results obtained, the benefit to the case for each task undertaken by the attorney, and the quality and effectiveness of the services performed by both the discharged and subsequent counsel. The number of hours an attorney has spent on the matter is not dispositive of the fee due to that attorney. Id. at 378.
We find that the appellants discharged the appellee and that the appellee became aware that she was discharged at least by April 29, 2004. We also find that subsequent to this dismissal the appellants' new counsel negotiated a satisfactory settlement of the drug claims. Applying the standard under Saucier, the attorneys' fees should be divided under a quantum meruit standard. While the appellee represented the appellants for a significant period of time (November 2000 through April 2004) and contributed many hours representing these clients, we also recognize that the appellants' new counsel used their expertise and experience to effectuate a successful settlement for the appellants. Under the standard in Smith and under the factors from the Rules of Professional Conduct, the division of fees cannot be limited to the number of hours spent by an attorney on a case. While the appellee invested a significant amount of time in representing the appellants, it is clear that the expertise and experience of Grenfell was required for the settlement of these cases. While the appellee would be entitled to a portion of the attorneys' fees, she is not entitled to 100% of the attorneys' fees under the Saucier standard.
In the aforementioned Saucier case, the Louisiana Supreme Court remanded the matter back to the trial court and ordered the trial court to require the second attorney be joined as an indispensable party for a full and proper adjudication of the matter. The court said both attorneys should be accorded the opportunity to establish *1294 his right to receive an appropriate apportionment of the one contingent fee owed by the client. Saucier at 119. Appellee failed to candidly identify the attorneys with a competing claim to the attorney's fees at issue in this appeal. Appellee also failed to inform the court of the existence of the still pending contingency fee dispute litigation in Mississippi between the appellants, appellee and Grenfell et al, involving the same alleged settlement proceeds that are in dispute in this case.
We find that the trial court committed manifest error in granting appellee a default judgment for the full 40% contingency fee plus expenses, without joining the necessary parties of Grenfell et al. and without applying the quantum meruit standard for an equitable division of attorneys' fees. We also find that the record did not contain sufficient competent evidence of the amount of funds disbursed to each appellant, from which the appellee seeks her share of the attorneys' fees.
Accordingly, we vacate the judgment confirming the default and remand to the lower court for further proceedings consistent with this opinion.
JUDGMENT VACATED AND REMANDED
ARMSTRONG, C.J., concurs.
ARMSTRONG, C.J., concurring.
I respectfully concur in the result reached by the majority.