## FERRIS *v.* POLANSKY

[No. 189, October Term, 1947.]

*Decided June 17, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*A. David Gomborov*, with whom were *Gomborov & Gomborov* and *H. Lee Brill* on the brief, for the appellant.

*William L. K. Barrett* and *Philip Beigel* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Superior Court of Baltimore City rendered by the Court, sitting as a jury, in favor of the appellee, Hyman Polansky, individually and trading as Rail Inn, defendant below, for costs, in a suit instituted against him by Don Ferris, plaintiff below, appellant here. The amount sued for was $798.

The appellee filed a motion in this case to dismiss the appeal on account of the failure of the appellant to promptly designate the portion of the record, proceedings and evidence to be contained in the record on appeal, as required by Rule 18 of this Court. As it does not appear that the appellee was in any way prejudiced, the motion to dismiss the appeal will be denied.

On or about October 11, 1946, the parties hereto entered into the following agreement:

"This constitutes a contract of agreement between Hy Polansky and Don Ferris for the services of an orchestra to be furnished by Don Ferris for the Rail Inn, owned by Hy Polansky, the music to be furnished will be three (3) men on Friday, four (4) men on Saturday

and Sunday nights from the hours of 9 p:m until 1:30 a:m beginning on Friday, October 11, 1946 and running through the entire season ending on ~~June 1st,~~ 1947 4/30/47. The price for the services of the Orchestra will be one hundred twenty ($120.00) dollars for the three (3) nights to be paid on Sunday night, the finish of the work week. Don Ferris will be strictly accountable to Hy Polansky for the services of the orchestra and will be allowed to be off on certain nights as long as the Orchestra is accounted for in first consideration. If Band proves unsatisfactory contract is subject to 2 weeks notice."

The testimony shows that the band consisted on Fridays of a string bass, drums and piano and on Saturdays and Sundays of a saxaphone, string bass, drums and piano. Out of thirty nights when the band played for the appellee, appellant was absent ten nights. When the appellant, who played the string bass, was not present, he supplied another person who played a guitar. Appellant admitted that the appellee probably objected to the substitution of the guitar for the string bass. He admitted that the appellee complained to the musicians in the band about this substitution. He said, however, that this objection was never made to him. He further admitted that the appellee complained to him because he was absent one-third of the time. The piano player stated that the appellant told him once or twice that the appellee objected to the guitar being substituted for the string bass. The saxaphone player also testified that the appellant told him on one or two occasions that the appellee did not like the guitar substituted for the string bass because the guitar "overshadowed the band". Appellee testified that Saturday nights were the most important nights and that was when he wanted the appellant present.

On December 5, 1946, the appellee notified the appellant that the services of the band would be no longer required after December 15, 1946, and the contract was cancelled as of that date. The appellee said that

the reason he cancelled the contract was because the band needed a leader, and he did not want the guitar there instead of the bass because everyone was complaining about it, and the music was not satisfactory. He said that he made this complaint to the appellant twice before he gave him notice on December 5th that the contract was terminated. He said when he complained to Ferris that appellant said he had a contract and could do anything he wanted to do, and walked away.

Appellant claimed that the reason the contract was cancelled was because the appellee desired to save money. He claimed that this was substantiated by the fact that immediately after the contract with the appellant ceased on December 15, 1946, the appellee rehired the same three men who had previously played in the band, and these three men were still playing at the Rail Inn at the time of the hearing in the case. However, the appellee testified that on December 15th, the night when the two weeks notice expired, Earl Ball, who played the piano, told Jack Lucky, the drummer, that he wanted to see the appellee. When the appellee approached Earl Ball, Ball said: " 'Do you have a band?' I said, 'No, I haven't.' He said, 'Let me take charge of the band, I think I can handle it.' I said, 'If you want to try it, it's up to you.' He tried and it's still there." Earl Ball, the piano player, testified that he approached the appellee for the employment through Jack Lucky a night or two before the notice expired. He said that he felt it was his privilege to take whomever he wanted in the new orchestra. He said that the appellee told him that he could only pay for three players. He later testified that the appellee said that all he wanted was three instruments. At all events, if the appellee actually had a right to cancel the contract, he did not lose the right because he saved money by dispensing with a string bass that he did not get and a guitar that he did not want.

Appellee said at the time of this suit the band consisted of the saxaphone, piano and drums and had no

string instruments and it was now satisfactory.

There have been a number of cases in this Court involving contracts for delivery of land or materials to be satisfactory to the buyer. Among those are the following. In *B. & O. Railroad Company v. Brydon*, 65 Md. 198, 611, 3 A. 306, 9 A. 126, 57 Am. Rep. 318, the railroad company contracted to purchase large quantities of coal of such quality as would be satisfactory to the corporation's master of transportation and master of machinery. This Court in that case said, 65 Md. at page 220, 3 A. 309: "Certainly they were not obliged to accept the coal, if they thought it was not fit for the uses contemplated by the contract; neither on the other hand would they be justified in rejecting it for the reason that it did not possess qualities, which at the time of the contract, it was known by the parties that it did not possess. By the terms of the contract the whole decision was committed to them; if they made their decision against the coal in good faith, the defendant would not be obliged to accept it, but if they fraudulently rejected it, their judgment would be without effect in law, and the defendant would not be excused by it."

In the case of *Devoine Company v. International Company*, 151 Md. 690, 136 A. 37, which involved a contract for delivery of certain materials of "quality satisfactory", the Court assumed that this meant of quality satisfactory to the buyer. This Court pointed out in that case that there was a definite clear principle of construction and one in harmony with the best of later authorities elsewhere. It there cited the following cases: *Lynn v. B. & O. Railroad Company*, 60 Md. 404, 45 Am. Rep. 741; *B. & O. Railroad Company v. Brydon*, 65 Md. 198, 611, 3 A. 306, 9 A. 126, 57 Am. Rep. 318, *supra; Latrobe v. Winans*, 89 Md. 636, 43 A. 829; *Goldberg v. Feldman*, 108 Md. 330, 70 A. 245. The rule is that when parties to a valid contract refer any question of performance to the decision of one of them or of a third person, the decision contracted for is final. Chief Judge Bond said in that case, 151 Md. at page 694, 136 A. 38:

"But it is only the decision contracted for that is final. If the question referred to does not arise, as if a title to be accepted as satisfactory should turn out to be clearly free from question, then a decision which pretends to be upon that question might have no effect. *Goldberg v. Feldman, supra.* And in those cases in which there may be a question open to decision, if the person to whom it is referred decides, not on the question submitted, but on some question of interest or advantage not made the basis of rights or obligations by the contract, the decision is outside of the contract and is given no effect by it."

In *Board of Education v. Cearfoss,* 165 Md. 178, 166 A. 732, involving the dismissal of school teachers, the Court in that case said, 165 Md. at page 186, 166 A. 736: "It does not involve an inquiry as to whether the plaintiffs satisfactorily performed the contracts, as did the case of *Devoine Co. v. International Co.,* 151 Md. 690, 136 A. 37, but it presents simply the question as to the duration of their employment, and as to the right of the other contracting party to discharge them at a particular period."

In *Frankfort Distilleries v. Machine Works,* 174 Md. 12, 197 A. 599, which involved a contract for the purchase of certain machinery, subject to acceptance and approval of a named person, this Court said, through Judge Parke, 174 Md. at page 18, 197 A. at page 602: "Here the matter involved is not one of taste or fancy but the efficiency, capacity and fitness of a specially built piece of machinery that is designed to operate similarly to a machine formerly built by the seller for the buyer, and to accomplish a specific purpose. The only limitation upon the arbiter is that he fairly and honestly test the machine and its output, and express his judgment in good faith."

In a contract where the employer agrees to employ another as long as the services are satisfactory, the employer has the right to terminate the contract and discharge the employee, whenever he, the employer, acting

in good faith is actually dissatisfied with the employee's work. This applies, even though the parties to the employment contract have stipulated that the contract shall be operative during a definite term, if it provides that the services are to be performed to the satisfaction of the employer. It is not necessary that there exist grounds deemed adequate by the trier of facts for the employer's dissatisfaction. He is the judge as to whether the services are satisfactory. However, this dissatisfaction, to justify the discharge of the employee, must be real and not pretended, capricious, mercenary, or the result of a dishonest design. If the employer feigns dissatisfaction and dismisses the employee, the discharge is wrongful. The employer in exercising the right of dismissal because of dissatisfaction must do so honestly and in good faith. 35 *American Jurisprudence,* Section 28, pages 463, 464; *Mackenzie v. Minis,* 132 Ga. 323, 63 S. E. 900, 23 L. R. A., N. S., 1083, 16 Ann. Cas. 723; *Fried v. Portis Bros. Hat Co.,* 41 Ga. App. 30, 152 S. E. 151.

In such a contract as that before us, involving the relation of master and servant, the courts seldom apply the doctrine that reasonable cause for dissatisfaction must exist. It is merely necessary to apply the ordinary rule that the employer has the right to discharge the employee if he is in fact honestly dissatisfied with his work and did not use such dissatisfaction as a mere pretense. 6 *A. L. R.* 1502; *Kramer v. Wien,* 92 Misc. 159, 155 N. Y. S. 193; *Bishop v. Bloomington Cannery Co.* 307 Ill. 179, 138 N. E. 597.

In the case at bar, under the contract of employment, the employer was the sole judge as to whether the services of the band were satisfactory. Testimony shows that the employer made numerous complaints about the substitution of the guitar for the string bass. The appellee complained to the appellant twice about appellant's numerous absences as leader of the band before he cancelled the contract.

This case was tried before the court sitting as a jury. The General Rules of Practice and Procedure adopted by this Court, Part III, Trials, Rule 9 (c) provides that where a case is tried upon the facts by the court, upon appeal this Court may review upon both the law and the evidence "* * * but the judgment of the trial court shall not be set aside on the evidence, unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. * * *" *Challenge Clothes Corp. v. Polski*, 181 Md. 590, 594, 31 A. 2d 309.

From the evidence offered, we cannot say that the trial judge was clearly erroneous in finding that the dissatisfacton of the employer was real and not pretended, capricious or mercenary. This judgment will therefore be affirmed.

*Judgment affirmed, with costs.*