721 A.2d 680

**Millicent SOMUAH**

**v.**

**Jeremy FLACHS.**

**No. 9, Sept. Term, 1998.**

Court of Appeals of Maryland.

Dec. 18, 1998.

242

Raymond M. Hertz (Jacob A. Ginsberg, Raymond M. Hertz & Associates, P.A., on brief), Greenbelt, for petitioner.

John M. Smallwood, Largo, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CHASANOW, Judge.

This appeal arises out of a suit filed by Jeremy Flachs (Respondent) in the Circuit Court for Prince George's County against Millicent Somuah (Petitioner) to recover compensation for the legal services Respondent provided to Petitioner. Petitioner presents two issues for our review, which we have rephrased as follows:

1. Whether an attorney's failure to inform a prospective client at the time of retention that he was not licensed to practice in Maryland, where the client's lawsuit would likely be filed, constitutes cause for the attorney's discharge?

2. Whether an attorney, who was retained on a contingent fee agreement and discharged for cause prior to the fulfillment of the contingency, may recover from his client the reasonable value of the services rendered prior to his discharge?

We hold that, under the circumstances of this case, a client has a good faith basis for being dissatisfied with her attorney when she discovers the attorney failed to inform her that he is not licensed to practice in Maryland, the state where the

attorney visited the client and where the cause of action arose. We further hold that where an attorney is discharged because the client has a good faith basis to no longer wish to be represented by the attorney and where the attorney has not engaged in serious misconduct, the attorney may recover compensation from the client for the reasonable value of the services rendered by the attorney prior to his discharge. The attorney's compensation is to be measured in light of the benefits obtained by the client as a result of the attorney's services and the nature and gravity of the cause that led to the discharge. In a contingent fee contract the attorney's cause of action, however, does not accrue until the contingency is fulfilled.

## I.

The underlying dispute arises out of an automobile accident involving a taxicab in which Petitioner and her daughter were severely injured. The accident occurred on March 8, 1992, in Prince George's County, Maryland. At the time of the accident, it appears that Petitioner resided in Virginia with her husband.[1] Sometime after the accident, Petitioner's brother contacted Respondent regarding the possibility of representing Petitioner. On April 3, 1992, while Petitioner was still recovering at Prince George's Community Hospital, Respondent visited and interviewed Petitioner. That same day, Petitioner retained Respondent to represent her regarding a possible personal injury claim as a result of this accident. During the initial interview on April 3, Respondent did not notify Petitioner that Respondent is not licensed to practice law in Maryland. The retainer agreement entered into by the parties provided, *inter alia*, for a one-third contingency fee to be deducted before the payment of expenses; that Petitioner agreed to pay all costs of investigation, preparation, and trial of the case;[2] and that Respondent had the right to cancel the

---

**1.** Petitioner also had a home in Maryland where she went to recuperate on June 5, 1992.

**2.** Investigative costs, etc., were apparently also contingent on Petitioner's recovery. The Respondent never made any demand for investiga-

agreement if, upon investigation, Petitioner's claim did not appear to have merit.

After the initial interview with Petitioner, Respondent began investigating Petitioner's claim, expending considerable effort, as well as a substantial amount of money as he took steps to collect and preserve evidence. Petitioner moved to Maryland on June 5, 1992, after her release from the hospital. Shortly thereafter, Respondent began to explore the possibility of a lawsuit in Maryland state courts. In July 1992, Respondent asked a Maryland attorney, Gregory Wells, to assist him in a Maryland lawsuit, and Wells accompanied him to Petitioner's home to discuss this possibility. During this meeting, Respondent notified Petitioner for the first time that he was not licensed to practice in Maryland. After the meeting, Wells declined to accept the case. Before Respondent could arrange a meeting with Petitioner and another local attorney, Petitioner discharged Respondent as her attorney by letter dated August 20, 1992. After his termination, Respondent sent Petitioner a letter requesting payment for the time spent and expenses incurred in investigating Petitioner's claim. Petitioner refused this request.

In the Circuit Court for Prince George's County, Respondent filed suit against Petitioner seeking to recover the reasonable value of services rendered and expenses paid during the course of his representation of Petitioner. Specifically,

---

tive costs prior to discharge as the fee agreement had crossed out a provision that provided: "CLIENT agrees that he will ... reimburse costs incurred by the Attorney within thirty day of receipt of a statement...." The fee agreement further provided: "CLIENT agrees that he will be responsible for actual court costs *if a suit is filed,* and that in the event of a settlement of his claim before or after suit is filed, that the fee provided for herein and such actual costs as may have been incurred shall be a lien upon any money received or recovered in this case." (Emphasis added). Respondent was discharged before suit was filed. The issue of costs, however, is not before this Court as the question in the petition for certiorari is whether the Petitioner is "liable to the [discharged] attorney *for any compensation for his services.*" (Emphasis added). If the fee agreement provided for immediate reimbursement for expenses, Petitioner would be liable for reasonable expenses actually incurred.

Respondent requested $11,324.66 for expenses paid and $8,685.00 for time spent investigating Petitioner's claim. The automobile accident case for which the Petitioner retained Respondent was still pending. Both parties filed motions for summary judgment and moved for judgment at trial; all were denied. The jury subsequently returned a verdict in favor of Respondent and awarded compensation in the amount of $19,946.01. Petitioner then filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which the trial court denied.

On appeal, the Court of Special Appeals in a reported opinion affirmed the judgment against Petitioner, holding that Respondent's failure to inform Petitioner that he was not licensed in Maryland did not constitute good cause to discharge Respondent so as to preclude his right to immediate compensation for the reasonable value of services rendered prior to Respondent's discharge. *Somuah v. Flachs,* 118 Md.App. 303, 315, 702 A.2d 788, 794 (1997). Petitioner timely filed a petition for writ of certiorari which was granted by this Court.

## II.

We must first address Respondent's argument that we should dismiss this appeal because Petitioner waived the issue of whether Respondent's lack of a Maryland license to practice law is cause as a matter of law for his termination. Respondent contends that Petitioner failed to raise this issue before the trial court for determination and notes that "[t]he issue of what constitutes cause for termination of a contract for legal representation is different from the issue of what constitutes the illegal practice of law in Maryland. These issues also differ from the issue of what activities a non-Maryland attorney can do in Maryland and be compensated."

Although this Court has some discretion to decide an issue raised for the first time on appeal, we generally will not decide any issue that was "not raised in and decided by the trial court." Maryland Rule 8–131; *see also Lerman v. Hee-*

*man,* 347 Md. 439, 450, 701 A.2d 426, 432 (1997). In her motion for summary judgment and motion for judgment, Petitioner asserted that she was entitled to judgment as a matter of law because the fact that Respondent lacked a Maryland license constituted cause for his termination, thereby precluding Respondent from collecting any compensation. We conclude that Petitioner adequately presented to the trial court the issue before this Court and thus has not waived the issue.

### III.

Turning now to the substantive issues before this Court, Petitioner alleges that she had cause to terminate Respondent as a matter of law because he failed to disclose at their initial meeting the fact that he was not licensed to practice law in Maryland, and thus Respondent is precluded from recovering any compensation. The Court of Special Appeals in this case limited what constitutes cause for terminating an attorney's representation, holding that "a client has cause for discharging a lawyer if the contract between the lawyer and the client is invalid, or if the lawyer's representation is in violation of the rules of professional responsibility, in violation of other law, or in violation of the agreement between the attorney and the client." *Somuah,* 118 Md.App. at 314, 702 A.2d at 794. The intermediate appellate court concluded that "a lawyer's failure to tell a prospective client that he is not licensed to practice in the jurisdiction where suit likely will be brought does not constitute the kind of fraud or other undue influence necessary to invalidate a lawyer-client contract." *Somuah,* 118 Md.App. at 315, 702 A.2d at 794. As we shall explain, a client's right to terminate an attorney-client relationship is not as limited as the Court of Special Appeals concluded.

It is a well-settled rule in this State that a client has great latitude in discharging his or her attorney. An attorney's authority to act for a client is freely revocable by the client. *See Skeens v. Miller,* 331 Md. 331, 335, 628 A.2d 185, 187 (1993); *Palmer v. Brown,* 184 Md. 309, 316, 40 A.2d 514,

517 (1945); *Boyd v. Johnson,* 145 Md. 385, 389, 125 A. 697, 698–99 (1924). The client's right to terminate the attorney-client relationship is necessary given the confidential nature of such a relationship and "the evil that would be engendered by friction or distrust." *Skeens,* 331 Md. at 335, 628 A.2d at 187. Because the power of the client to discharge his or her attorney is an "implied term of the retainer contract," the client does not breach the contract when he or she terminates the attorney-client relationship based on a reasonable subjective dissatisfaction with the attorney's services, even if the client does not have "good cause." *Id.*[3] Furthermore, the fact that an attorney has been retained under a contingent fee agreement does not affect the client's absolute right to discharge an attorney. ROBERT L. ROSSI, ATTORNEYS' FEES § 3:18, at 167–68 (2d ed.1995).

Although this Court has not previously explained what constitutes a proper basis for terminating an attorney-client relationship, this Court has addressed to some extent the circumstances in which an attorney's compensation may be forfeited. Under certain circumstances, an attorney's fee may be forfeited where the attorney represents conflicting interests. *See Atlantic Richfield Co. v. Sybert,* 295 Md. 347, 354, 456 A.2d 20, 23–24 (1983)(noting that a fee agreement between an attorney and a client ordinarily will be set aside where the attorney simultaneously represents adverse interests, whether the attorney's or another client's, unless the attorney fully disclosed the conflict of interest to the client and the client nevertheless voluntarily and knowingly entered into the transaction with the attorney); *Keyworth v. Israelson,* 240 Md. 289, 302–03, 214 A.2d 168, 175 (1965)(same). In addition, a fee agreement will be set aside where it is induced by fraud or undue influence, or where it involves an abuse of the client's confidence. *See Attorney Griev. Comm'n v. Korotki,* 318 Md.

---

**3.** The majority of jurisdictions follow the rule that a "discharged attorney may recover *only* on a quantum meruit basis." Judy Beckner Sloan, *Quantum Meruit: Residual Equity in Law,* 42 DEPAUL L.REV. 399, 438 (1992)(emphasis added).

646, 669, 569 A.2d 1224, 1236 (1990)(noting that an "increase in fee obtained by an attorney through threats to terminate a representation which the attorney was obliged to continue" will be held invalid). We also have noted that "an attorney who, without justification, terminates an agreed undertaking, is not entitled to any fee at all...." *Korotki*, 318 Md. at 669, 569 A.2d at 1235. Moreover, a fee that is clearly excessive will not be enforced, and the court will reduce such a fee to what is fair and reasonable under the circumstances. *See Tucker v. Dudley*, 223 Md. 467, 474, 164 A.2d 891, 896 (1960). In our recent decision, *Post v. Bregman*, 349 Md. 142, 707 A.2d 806 (1998), we indicated that a fee agreement in violation of the Maryland Lawyers' Rules of Professional Conduct may result in the forfeiture of an attorney's compensation. *See Post*, 349 Md. at 168, 707 A.2d at 819 (noting that a fee-sharing agreement between attorneys in violation of Maryland Lawyers' Rule of Professional Conduct 1.5 may be unenforceable).

Other jurisdictions have addressed what constitutes cause for the termination of an attorney-client relationship. It is noteworthy that many jurisdictions found, or indicated that there was, cause for termination but still permitted *quantum meruit* recovery by the attorney. These courts have indicated that almost any good faith reason asserted by the client may constitute cause to discharge an attorney, ranging from whatever causes the client to lose faith in the attorney, *Fracasse v. Brent*, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9, 13 (Cal.1972)(noting that "[i]t should be sufficient that the client has, for whatever reason, lost faith in the attorney, to establish 'cause' for discharging him"), to an attorney's breach of contract. *See, e.g., Moore v. Fellner*, 50 Cal.2d 330, 325 P.2d 857, 863–64 (Cal.1958)(noting that attorney could be discharged where attorney breached the contingent fee contract with client by demanding an additional fee for an appeal, but the attorney is entitled to *quantum meruit* recovery after the contingency has occurred); *Searcy, Denney, Scarola, Barnhart & Shipley v. Scheller*, 629 So.2d 947, 949–50 (Fla.Dist.Ct.App.1993)(noting that attorney was discharged with cause where attorney breached the contract with client

by threatening to withdraw during settlement negotiations unless client agreed to a higher contingency fee, but attorney did not forfeit all recovery for services rendered), *review denied*, 649 So.2d 870 (Fla.1994). For other examples of discharge for cause, see *Salopek v. Schoemann*, 20 Cal.2d 150, 124 P.2d 21, 24 (Cal.1942)(noting that discharge of attorney was justified where "an attorney misstate[d] the legal effect of facts or of procedure to his client either through ignorance, carelessness or by mistake, and by his advice indicate[d] and then pursue[d] a course of action which would lead unquestionably to results contrary to the client's declared and proper objectives," but attorney could recover reasonable value of the services rendered); *Tobias v. King*, 84 Ill.App.3d 998, 40 Ill.Dec. 400, 406 N.E.2d 101, 104 (Ill.App.Ct.1980)(noting that attorney was discharged for cause where client was dissatisfied with attorney's handling of case that had made little progress in three and one-half years, but attorney was not barred from any recovery for reasonable value of services); *O'Rourke v. Cairns*, 683 So.2d 697, 703 (La.1996)(upholding trial judge's finding that attorney was discharged for cause where attorney was uncommunicative with client, was uncertain strategically and substantively with regard to the client's medical malpractice claim, and exhibited an unprofessional social demeanor, all contributing to the client's lack of confidence in the attorney, but *quantum meruit* recovery was permissible); *Osborne v. Vulcan Foundry, Inc.*, 699 So.2d 492, 496–97 (La.Ct.App.1997)(upholding trial court's finding that attorney was discharged for cause where client terminated attorney because the client did not want the attorney to represent both the client and the client's wife, but attorney was entitled to compensation), *writ. denied*, 704 So.2d 1205 (La.1997); *Guilbeau v. Fireman's Fund Ins. Co.*, 293 So.2d 216, 218 (La.Ct.App.1974)(noting that an attorney's failure to perform his or her duties, *i.e.*, doing nothing but filing petition during a two-year period, may constitute cause, but *quantum meruit* was applicable); *cf. Dagny Management Corp. v. Oppenheim & Meltzer*, 199 A.D.2d 711, 606 N.Y.S.2d 337, 339 (N.Y.App.Div.1993)(concluding that firm was discharged for

cause where firm interfered with and frustrated client's attempts to settle action and holding that firm's misconduct was serious enough to require forfeiture of its fee).

In *H & R Block, Inc. v. Garland*, 278 Md. 91, 359 A.2d 130 (1976), we cited *Ferris v. Polansky*, 191 Md. 79, 85–86, 59 A.2d 749, 752 (1948), for the following proposition:

"Under Maryland law, a contract which provides that performance of personal services must be satisfactory to the employer entitles the employer to terminate the contract if he is, in fact, honestly dissatisfied with the performance of the employee, and did not use such dissatisfaction as a mere pretense."

*H & R Block*, 278 Md. at 99, 359 A.2d at 134. A contract to employ an attorney is a form of contract for performance of personal services, which is terminable by the client if the attorney's services are unsatisfactory. In *Skeens*, we stated: "It is well settled that the authority of an attorney to act for a client is revocable at the will of the client." 331 Md. at 335, 628 A.2d at 187 (citations omitted). The authority of the client to terminate the retainer contract derives from the special nature of such a contract. *Id.* The attorney-client relationship is of the highest fiduciary nature, and it calls for the utmost trust and confidence. In recognition of this fact, courts give a dissatisfied client the right to terminate the contract. The right of a dissatisfied client to discharge an attorney is "deemed necessary in view of the confidential nature of the relationship between attorney and client and the evil that would be engendered by friction or distrust." *Id.* (citations omitted). Because the right of a dissatisfied client to discharge the attorney is implied into the retainer contract, a client who has reason to be dissatisfied with an attorney and who discharges the attorney is not liable for breach of contract. *Id. See also Vogelhut v. Kandel*, 308 Md. 183, 192, 517 A.2d 1092, 1097 (1986)(Rodwosky, J., concurring).

In *Ferris*, we set the standard for discharging an employee who is employed as long as the services are satisfactory. We stated:

"In a contract where the employer agrees to employ another as long as the services are satisfactory, the employer has the right to terminate the contract and discharge the employee, whenever he, the employer, acting in good faith is actually dissatisfied with the employee's work. This applies, even though the parties to the employment contract have stipulated that the contract shall be operative during a definite term, if it provides that the services are to be performed to the satisfaction of the employer. It is not necessary that there exist grounds deemed adequate by the trier of facts for the employer's dissatisfaction. He is the judge as to whether the services are satisfactory. However, this dissatisfaction, to justify the discharge of the employee, must be real and not pretended, capricious, mercenary, or the result of a dishonest design. If the employer feigns dissatisfaction and dismisses the employee, the discharge is wrongful. The employer in exercising the right of dismissal because of dissatisfaction must do so honestly and in good faith." (Citations omitted).

*Ferris*, 191 Md. at 85–86, 59 A.2d at 752. The right of a dissatisfied client to discharge an attorney is analogous to the right of a dissatisfied employer to discharge an employee under a contract of employment specifying that the employee's services must be satisfactory to the employer.

A client discharges an attorney without just cause when the client has no basis for being dissatisfied with the attorney's services or the discharge is in bad faith. Under these circumstances, the attorney has an immediate cause of action for breach of the fee contract. On the other hand, a client has cause to discharge his or her attorney when the client has any good faith basis for being dissatisfied with the attorney, even though the attorney has performed competently.[4] Under these circumstances, the attorney is entitled to

---

4. As the Court of Appeal of Louisiana noted: "The relation between attorney and client is a close personal relationship which is far more complex than simply whether the attorney is performing his professional responsibilities and obligations in the proper manner." *Smith v.*

recovery for the work done prior to discharge, but, as will be discussed, recovery on a contingent fee contract must await the occurrence of the contingency. From our review of the case law in other jurisdictions, it is also apparent that a finding that a client had cause to discharge his or her attorney does not require a finding of misrepresentation, fraud, deceit, or a violation of the Rules of Professional Conduct by the attorney. Cause for discharge does not require proof that the discharged attorney failed to act competently, but the client must show a good faith basis for being dissatisfied with the representation. *Cf. Vogelhut v. Kandel,* 308 Md. 183, 192, 517 A.2d 1092, 1097 (1986)(Rodowsky, J., concurring). As we have explained, cause for discharging an attorney can be divided into two groups: First, where the attorney commits serious misconduct, *i.e.,* fraud or illegal conduct, etc.; and second, where the attorney acts competently and there is no serious misconduct, but the client has a good faith basis to be dissatisfied with the attorney. In the former situation, the attorney is not entitled to any fee. In the latter situation, the attorney is entitled to be compensated for the work done prior to discharge, but in a contingent fee contract, the attorney must await the occurrence of the contingency. As will be discussed, this is based on the agreement that no fee will be payable unless and until the contingency occurs.

Respondent points out, and Petitioner concedes, that Respondent performed competently prior to his discharge, and we note that there was no misrepresentation, fraud, or deceit on the part of Respondent. In support of his argument to uphold the judgment of the lower court, Respondent asserts that it was unclear where a lawsuit would be filed because Petitioner's claims could have been filed in federal court. During the first two months of his investigation Petitioner was a Virginia resident, and thus a possible federal claim existed based on diversity jurisdiction. In addition, Respondent contends that there was a substantial likelihood of a federal

*Westside Transit Lines, Inc.,* 313 So.2d 371, 376 (La.Ct.App.1975), *writ. denied,* 318 So.2d 43 (La.1975).

lawsuit because of a potential products liability claim against the automobile manufacturer involving the crashworthiness of the vehicle in which Petitioner was riding, raising issues that are determined by federal law. Taking Respondent's arguments into consideration, we conclude for the following reasons that Petitioner had a good faith basis for being dissatisfied with Respondent's representation.

■■■ Although Respondent is licensed to practice law in Virginia, the United States District Court for the District of Virginia, and the District of Columbia, he is not licensed to practice in Maryland, where the accident occurred and the lawsuit likely would have been filed. All of the expenses incurred by Respondent during his investigation were incurred in Maryland. In addition, Respondent's first meeting with Petitioner occurred in Maryland when he visited Petitioner at the hospital. Respondent later visited Petitioner at her home in Maryland where she moved on June 5, 1992. Once Petitioner became domiciled in Maryland, the possibility of a lawsuit in Maryland federal court based on diversity jurisdiction was foreclosed. Respondent did not explain to Petitioner at their initial meeting, or in the retainer contract, that he would be unable to try the case and would need local counsel if the case were filed in Maryland state court. In fact, Respondent did not inform Petitioner of such a limitation on his ability to represent Petitioner until July 1992, three months after he was retained. When Respondent undertook to represent Petitioner, Petitioner rightfully expected that Respondent could handle any court proceedings. Thus, at the time Respondent disclosed to Petitioner that he was unable to represent her without bringing in local counsel for the court proceedings, Petitioner had a basis for losing confidence in and being dissatisfied with the Respondent's continued representation.

## IV.

■■■ Since we have determined that Petitioner had a good faith basis for being dissatisfied with her representation

by Respondent, we now must determine if, and when, Respondent is entitled to *quantum meruit* recovery based on the reasonable value of services rendered prior to his discharge. As with the determination of cause, the determination of whether a discharged attorney is entitled to any compensation in a given case depends upon the facts and circumstances before the court. It is a well-settled rule in this State that, where a client terminates an attorney-client relationship without any cause, or an attorney terminates the relationship with cause, the attorney may be entitled to *immediate quantum meruit* recovery from the client, *i.e.*, the reasonable value of the legal services rendered prior to the attorney's discharge. *Skeens*, 331 Md. at 335–36, 628 A.2d at 187. On the other hand, where a client discharges his or her attorney for cause, there are circumstances where an attorney is not entitled to any compensation. *See Skeens*, 331 Md. at 335, 628 A.2d at 187; *Korotki*, 318 Md. at 669, 569 A.2d at 1235–36; *Dagny Management Corp.*, 606 N.Y.S.2d at 338–39. As previously noted, the trend in other jurisdictions is generally to permit an attorney discharged by a dissatisfied client to recover compensation in *quantum meruit* from the client for services rendered prior to discharge. *See, e.g., Crockett & Brown v. Courson*, 312 Ark. 363, 849 S.W.2d 938, 940–41 (Ark.1993); *see also Kopelman and Assoc. v. Collins*, 196 W.Va. 489, 473 S.E.2d 910, 917 (W.Va.1996). We hold that where a client has a good faith basis to terminate the attorney-client relationship but there is no serious misconduct warranting forfeiture of any fee, the attorney is entitled to compensation based on the reasonable value of services rendered prior to discharge, considering as factors the reasonable value of the benefits the client obtained as a result of the services rendered prior to discharge and the nature and gravity of the cause that led to the attorney's discharge.

Petitioner contends that, under the circumstances of this case, this Court should find as a matter of law that Petitioner discharged Respondent for serious misconduct, and thus Respondent is not entitled to any compensation whatsoever. Specifically, Petitioner would have us hold that Petition-

er's discharge of Respondent for his failure to inform Petitioner that he was not licensed to practice in Maryland constitutes a *per se* termination with cause thereby precluding Respondent's recovery. In support of her contention, Petitioner argues that Respondent's investigation of Petitioner's claims constituted the practice of law in Maryland without a license and notes that Maryland Code (1989, 1995 Repl.Vol.), Business Occupations and Professions Article, §§ 10–601(a)[5] and 10–602,[6] Rule 14 of the Maryland Rules Governing Admission to the Bar,[7] and the Maryland Lawyers' Rules of Professional Conduct regarding the unauthorized practice of law in this State exist "to protect the public from those incompetent or unable to practice law in this State and to further protect the integrity of the profession." Petitioner further cites several cases from other jurisdictions for the proposition that an out-of-state attorney who renders legal services locally engages in the unauthorized practice of law and may not recover compensation from his or her client for such services.

In support of her contention, Petitioner primarily relies on four cases in which the courts addressed an attorney's right to compensation for legal services performed in a state in which

---

**5.** Maryland Code (1989, 1995 Repl.Vol.), Business Occupations and Professions Article, § 10–601(a) provides: "Except as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar."

**6.** Maryland Code (1989, 1995 Repl.Vol.), Business Occupations and Professions Art., § 10–602 provides:

"Unless authorized by law to practice law in the State, a person may not represent to the public, by use of a title, including 'lawyer', 'attorney at law', or 'counselor at law', by description of services, methods, or procedures, or otherwise, that the person is authorized to practice law in the State."

**7.** Rule 14(a) of the Rules Governing Admission to the Bar of Maryland permits

"[a] member of the Bar of this State who is an attorney of record in an action pending in any court of this State ... or any of its political subdivisions, may move, in writing, that an attorney who is a member in good standing of the Bar of another state be admitted to practice in this State for the limited purpose of appearing and participating in the action as co-counsel with the movant."

the attorney was not licensed to practice: *Perlah v. S.E.I Corp.*, 29 Conn.App. 43, 612 A.2d 806 (Conn.App.Ct.1992); *Taft v. Amsel*, 23 Conn.Supp. 225, 180 A.2d 756 (Conn.Super.Ct.1962); *Lozoff v. Shore Heights, Ltd.*, 66 Ill.2d 398, 6 Ill.Dec. 225, 362 N.E.2d 1047 (Ill.1977); and *Spivak v. Sachs*, 16 N.Y.2d 163, 263 N.Y.S.2d 953, 211 N.E.2d 329 (N.Y.1965). In *Perlah*, the attorney, licensed to practice law in New York, maintained an office in Connecticut where he was not licensed. 612 A.2d at 807. The attorney represented an investment group regarding the acquisition of a New York corporation. Concluding that the attorney practiced law in Connecticut by preparing legal documents for the acquisition during this representation, the court held that the attorney could not recover compensation for legal services performed in Connecticut before he was admitted to practice in that state. *Perlah*, 612 A.2d at 809. The *Taft* case also involved a New York attorney who was denied compensation for services primarily performed in Connecticut. *See Taft*, 180 A.2d at 756–57. The attorney was involved in forming corporations, entering into negotiations to acquire other trucking companies, and managing the corporation, and the court noted that it was impossible to determine at what point the attorney was acting as the client's attorney and not as a member of the corporation. *Taft*, 180 A.2d at 756–57. In *Lozoff*, the Supreme Court of Illinois held that a Wisconsin attorney, who was not licensed to practice in Illinois, could not recover compensation for legal services rendered in Illinois which consisted of negotiations regarding the sale of certain real estate. 6 Ill.Dec. 225, 362 N.E.2d at 1048. The court, however, cautioned that its holding did not create a *per se* rule:

> "We do not mean in our holding today to have it understood that there can never be circumstances that will allow an out-of-[s]tate attorney who is not within Rule 707[, permitting an out-of-state attorney to participate in court proceedings,] to recover for legal services. We recognize there are transactions involving parties and attorneys from more than one State which would require a result different from today's holding."

*Lozoff,* 6 Ill.Dec. 225, 362 N.E.2d at 1049. Finally, in *Spivak,* a California attorney was denied compensation for services rendered in New York to a New York resident in connection with her divorce, which included reviewing drafts of separation agreements and advising the client based on his knowledge of both New York and California law. *Spivak,* 263 N.Y.S.2d at 954–55, 211 N.E.2d 329. Like the *Lozoff* court, the Court of Appeals of New York "recogniz[ed] the numerous multi-State transactions and relationships of modern times" and cautioned against applying its holding to all cases in which an out-of-state attorney comes to New York for "conferences or negotiations relating to a New York client and a transaction somehow tied to New York." *Spivak,* 263 N.Y.S.2d at 956, 211 N.E.2d 329.

The cases on which Petitioner relies can be distinguished from the case before us. In particular, the rationale behind these decisions appears to be based on the violations of the state's prohibition of the unauthorized practice of law. In the cases cited by Petitioner, the attorneys were clearly practicing law in a state in which they were not licensed to practice by drafting documents or advising the clients regarding matters of local law. With the exception of *Spivak,* it also appears that the attorneys in these cases may have represented themselves as attorneys of the state in which they were not licensed. Moreover, in *Perlah,* the attorney maintained an office in the state in which the attorney was not licensed to practice. Respondent did not and does not have a Maryland office, and he did not engage in any advertising or solicitation that led to his introduction to Petitioner. Furthermore, two of the decisions explicitly cautioned against a *per se* rule denying compensation to all out-of-state attorneys who perform transactions in a state in which they are not licensed, noting the frequency of multi-state transactions in modern times. *See Spivak,* 263 N.Y.S.2d at 956, 211 N.E.2d 329; *Lozoff,* 6 Ill.Dec. 225, 362 N.E.2d at 1049.

This Court has noted that the "goal of the prohibition against unauthorized practice is to protect the public from being preyed upon by those not competent to practice law—

from incompetent, unethical, or irresponsible representation." *In re Application of R.G.S.,* 312 Md. 626, 638, 541 A.2d 977, 983 (1988). In *Kennedy v. Bar Ass'n,* 316 Md. 646, 561 A.2d 200 (1989), which involved a complaint against an attorney who was admitted to practice law in the United States District Court for the District of Maryland, but not admitted in Maryland, we addressed the attorney's argument that he should be permitted to practice federal and non-Maryland law from his office in Maryland. We noted that the "unauthorized practice of law ... is not limited to practice utilizing the common law and statutes of Maryland." *Kennedy,* 316 Md. at 662, 561 A.2d at 208. In discussing what constitutes the practice of law, we indicated that it includes "[u]tilizing legal education, training, and experience ... [to apply] the special analysis of the profession to a client's problem. Depending on the problem, that analysis may require consideration of federal, state, local or foreign law." *Id.* Under certain circumstances, "meeting with prospective clients may ... constitute the practice of law because 'the very acts of interview, analysis and explanation of legal rights constitute practicing law in Maryland.'" *Attorney Griev. Comm. v. James,* 340 Md. 318, 324, 666 A.2d 1246, 1248 (1995)(quoting *Kennedy,* 316 Md. at 666, 561 A.2d at 210). We are unable to conclude, however, that, under the circumstances of this case, the investigation performed by Respondent primarily consisting of gathering and preserving evidence in order to analyze Petitioner's potential claims constituted the unauthorized practice of law where, unlike in *Kennedy,* Respondent did not expressly hold "himself out to the public as an attorney engaged in the general practice of law in Maryland" and did not maintain his principal office in Maryland. 316 Md. at 659, 561 A.2d at 207.

 While we agree with Petitioner that when an out-of-state attorney takes a case that may need to be filed in Maryland he or she should disclose this fact to the client and advise the client that local counsel might have to be retained, we do not agree that Respondent's failure to do so results in the complete forfeiture of all compensation. Although New York courts prohibit an attorney discharged for cause from

recovering any fee whatsoever, the majority of jurisdictions have permitted an attorney discharged for cause to recover in *quantum meruit* the reasonable value of the attorney's services competently rendered prior to the attorney's discharge. *See, e.g., Crockett & Brown,* 849 S.W.2d at 941; *Salopek,* 124 P.2d at 24; *Tobias,* 40 Ill.Dec. 400, 406 N.E.2d at 104; *see also Covington v. Rhodes,* 38 N.C.App. 61, 247 S.E.2d 305, 308 (N.C.Ct.App.1978), *review denied,* 296 N.C. 410, 251 S.E.2d 468 (N.C.1979); *Collins,* 473 S.E.2d at 917. The primary rationale for permitting *quantum meruit* recovery is to prevent unjust enrichment to the client of the benefits of the attorney's services prior to discharge. *See Moore,* 325 P.2d at 863. In addition, forfeiture of the attorney's entire fee could result in an undue windfall to the client and thus is a harsh remedy. *See Scheller,* 629 So.2d at 954. In awarding a discharged attorney the reasonable value of the services he or she rendered prior to discharge, the court "preserve[s] the client's right to discharge his attorney without undue restriction, and yet acknowledge[s] the attorney's right to fair compensation for work performed." *Fracasse,* 100 Cal.Rptr. 385, 494 P.2d at 14. Often "a client's termination of an attorney-client relationship will not be 'wrongful' but ... the attorney's conduct will also not be 'wrongful' to the extent that it should bar quantum meruit recovery of attorney fees. In such circumstances, it would be unfair not to compensate the attorney for work completed before the discharge under the equitable doctrine of quantum meruit." *Polen v. Reynolds,* 222 Mich.App. 20, 564 N.W.2d 467, 471 (Mich.Ct.App.1997).

In the instant case, the Court of Special Appeals concluded that the "failure of a lawyer to tell a prospective client that he is not licensed to practice in the jurisdiction where suit likely will be filed does not constitute a cause for discharging that lawyer that would preclude compensation for services rendered." *Somuah,* 118 Md.App. at 316, 702 A.2d at 794. The intermediate appellate court noted that an attorney generally forfeits his or her compensation where: "1) the agreement he forms with his client is invalid (as, for example, where that agreement is induced by fraud or undue influence); or 2) the

attorney's representation violates a condition of the contract with the client, the applicable rules of professional responsibility, or any other law." *Somuah,* 118 Md.App. at 314, 702 A.2d at 793–94. As we noted earlier, this Court has indicated that an attorney's compensation may be forfeited where the attorney represents conflicting interests, or the attorney's fee agreement with the client was induced by fraud or undue influence. *See* cases cited, *supra,* part III. We also agree with the jurisdictions that have indicated that *quantum meruit* recovery may be inappropriate where an attorney engages in misconduct, prejudicial to the client, for which the attorney may be disciplined, or where recovery by the attorney would be contrary to public policy. *See, e.g., Polen,* 564 N.W.2d at 471; *Crawford v. Logan,* 656 S.W.2d 360, 364 (Tenn.1983). Thus, "basis" for an attorney's discharge and "cause" for the forfeiture of an attorney's compensation are not one and the same. Although Respondent was properly discharged, Respondent has not engaged in any serious misconduct that justifies forfeiture of any compensation for services.

Where an attorney has been discharged for cause but that cause does not justify forfeiture, some courts have reduced the *quantum meruit* recovery of the attorney by a percentage due to the "nature and gravity of the cause leading to discharge." *See, e.g., O'Rourke,* 683 So.2d at 704; *see also Polen,* 564 N.W.2d at 472 (noting that where an attorney bears substantial responsibility for his or her discharge the court "should deduct the costs of work that had to be duplicated or modified from the discharged counsel's quantum meruit recovery"). As one of several factors to be considered in determining a reasonable attorney's fee under *quantum meruit,* Illinois courts consider the benefits to the client from the discharged attorney's services. *See Johns v. Klecan,* 198 Ill.App.3d 1013, 145 Ill.Dec. 71, 556 N.E.2d 689, 693 (Ill.App.Ct.1990). In situations where an attorney is discharged because the client has a good faith basis for being dissatisfied with the attorney, but the attorney's conduct was not wrongful in the sense that forfeiture of all fees would be justified, we strike a balance between the client's absolute right to discharge his or her

attorney and the attorney's right to fair compensation for services competently rendered prior to discharge.

In determining the reasonable value of the services of a discharged attorney to the client, we note that factors which may be considered by the court are listed in Maryland Lawyers' Rule of Professional Conduct 1.5:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent."

The primary consideration is to what extent have the attorney's services directly benefitted the client. *See Kenny v. McAllister*, 198 Md. 521, 525, 84 A.2d 897, 899 (1951)(noting that one factor to be considered in determining attorney's fees is the benefit obtained by the client from the services rendered by the attorney); *see also* Linda Ann Reid, *Crockett and Brown, P.A. v. Courson: Determining the Fee of an Attorney Discharged "for Cause"*, 47 ARK. L.REV. 725, 738–39 (1994)(discussing jurisdictions' consideration of the "benefit of the discharged attorney's services to the client when determining the amount of the attorney's recovery"); 7 AM. JUR. 2D *Attorneys at Law* § 302 (1997)(noting that an attorney discharged for cause may recover from the client only the "amount by which his or her services have benefited the client,

who, in the absence of recovery by the attorney, would be unjustly enriched by such services")(footnote omitted). Where an attorney bears substantial responsibility for his or her discharge, the client should not be liable for the costs of work that was required to be duplicated or modified from what the discharged attorney had done. *See Polen*, 564 N.W.2d at 472. Furthermore, the court should consider the nature and gravity of the cause that led to the attorney's discharge and adjust any *quantum meruit* recovery by such an amount. *See O'Rourke*, 683 So.2d at 704. We do not even rule out recovery of an appropriate proportion of the contingent fee.

Public policy supports the result in this case. Petitioner is proceeding with a products liability claim against Chrysler through her current attorney. There is evidence in the record that Petitioner accepted some of the benefits of Respondent's services, such as retaining the experts that Respondent originally hired and photographs that Respondent took of the taxicab in which Petitioner was riding. In addition, Respondent secured and stored the vehicle so that it could be used as evidence. Petitioner's current lawyer has this vehicle in his possession. Petitioner's retention of any benefits of Respondent's services without compensation to Respondent would result in an undue windfall to Petitioner, and thus it would be unfair not to compensate Respondent under the circumstances of this case.

## V.

The result in this case requires us to address another issue: Where the attorney was retained on a contingency basis and discharged by a dissatisfied client prior to the fulfillment of the contingency, when may the attorney recover compensation in *quantum meruit?*

In *Skeens*, this Court addressed the timing of an attorney's action for compensation for the reasonable value of services performed prior to discharge where the attorney was retained on a contingent fee agreement and was discharged by the

client *without* any good faith basis prior to the occurrence of the contingency. 331 Md. at 336–37, 628 A.2d at 188. In his complaint against his former client for *quantum meruit* recovery, the attorney, Skeens, had alleged that he was discharged without any basis. Because the trial court dismissed the complaint for failure to state a claim upon which relief could be granted, this Court assumed as true that the client discharged Skeens without any basis. *Skeens*, 331 Md. at 336, 628 A.2d at 187 (noting that this Court will assume as true all well-pleaded material facts in the complaint and any reasonable inferences that may be drawn from it). As we discussed in *Skeens*, courts in other jurisdictions are split as to when a discharged attorney may sue his or her former client for *quantum meruit* recovery. 331 Md. at 337–40, 628 A.2d at 188–90 (discussing rationales behind the "California rule" requiring an attorney to wait until the contingency is met and the "New York rule" permitting an attorney to sue immediately upon discharge). Following the "New York rule," this Court held that, where an attorney has been discharged without cause, the attorney's cause of action in *quantum meruit* accrues immediately upon the termination of the contingent agreement, and the attorney is not required to wait until the contingency is fulfilled. 331 Md. at 343–44, 628 A.2d at 191 (reasoning that "a client who without cause terminates a contingent fee agreement may not thereafter resurrect the contingency term as a defense when the discharged attorney files a fee claim").

The *Skeens* decision does not require a similar result in the instant case as Respondent was discharged because the client had a good faith basis for being dissatisfied with the attorney-client relationship. Where any fee is contingent on recovery by the client and where, as in this case, there has been some basis for the client being dissatisfied with the attorney, the contingency generating the fee must occur prior to the attorney's recovery. We conclude that the attorney's claim accrues upon the fulfillment of the contingency, *i.e.*, where the plaintiff/former client obtains a final judgment. Respondent therefore must wait until Petitioner recovers in

her action against Chrysler in order to maintain his action for compensation.

 Although we need not decide the issue, we note that it is conceivable that there may even be some advantage to Respondent in waiting to see if the contingency occurs, *i.e.,* that the client recovers for the accident. If there is a large recovery that is in significant measure due to Respondent's efforts, a good argument can be made for basing the *quantum meruit* recovery on a percentage of the total fee.[8] If there is no recovery, there will be no fee. In situations where the contingency occurs, any *quantum meruit* recovery will have as a maximum the appropriate portion of the total fee generated by the recovery. Because Respondent was discharged in good faith, but has not forfeited the right to compensation in *quantum meruit* based on the reasonable value of services rendered prior to his discharge with consideration of the factors discussed in this opinion, we reverse the judgment of the Court of Special Appeals with instructions to remand this case to the Circuit Court for Prince George's County for further proceedings conditioned upon Petitioner's recovery in her action against Chrysler for injuries sustained in the automobile accident on March 8, 1992.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND**

---

8. If the discharged attorney sues to recover a percentage of the contingency fee, the new attorney must be joined as a party to the action because the discharged attorney's recovery will be derived from the new attorney's share of the recovery. This division will be based on the discharged attorney's contribution to the successful legal efforts prior to the discharge. *Cf. Post v. Bregman,* 349 Md. 142, 169, 707 A.2d 806, 819 (1998)(observing that attorneys may contract for a division of fees so long as the division in good faith represents the actual proportion of services to be performed).

THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.

Dissenting Opinion by RODOWSKY, J., in which WILNER, J., joins.

RODOWSKY, Judge, dissenting.

The majority opinion in effect overrules *Skeens v. Miller*, 331 Md. 331, 628 A.2d 185 (1993), while transparently denying that it does so. In addition to its disregard of *stare decisis*, the opinion unnecessarily muddles Maryland law concerning attorney-client retainer contracts, concerning contracts to be performed to the satisfaction of the promisee, and concerning the difference between express and implied contracts.

I

Prior to today's decision Maryland law concerning the rights of the parties to an attorney-client retainer contract was relatively well-settled in five aspects. First, "the authority of an attorney to act for a client is revocable at the will of the client. The client's power to discharge the attorney is an implied term of the retainer contract." *Id.* at 335, 628 A.2d at 187 (citations omitted). Second, "[b]ecause the client's power to end the relationship is an implied term of the retainer contract, the modern rule is that if the client terminates the representation, with or without cause, the client does not breach the retainer contract, and thus, the attorney is not entitled to recover on the [express] contract." *Id.* Third, "[i]f the client discharges the attorney for cause, the prevailing rule is that the attorney may not recover any compensation." *Id.* Fourth, "if the representation is terminated either by the client without cause or by the attorney with justification, the attorney is entitled to be compensated for the reasonable value of the legal services rendered prior to termination." *Id.* at 336, 628 A.2d at 187. Fifth, the attorney's claim for the reasonable value of services rendered prior to termination may be asserted when the client terminates the representation without cause, even where the parties had agreed on a contin-

gent fee. This fifth rule was the holding in *Skeens*. *Id.* at 344, 628 A.2d at 191.

Nothing in the prior decisions of this Court suggests that "cause" for the termination of an attorney's services, which precludes the attorney's right to any compensation, is anything other than a material breach of the contract by the attorney. *St. Paul at Chase v. Manufacturers Life Ins. Co.*, 262 Md. 192, 217–18, 278 A.2d 12, 25, *cert. denied*, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971); *Maryland Credit Fin. Corp. v. Hagerty*, 216 Md. 83, 92, 139 A.2d 230, 234 (1958) (where the employment contract is for a term, "cause" for discharge which terminates the employer's obligation to pay, means a material breach by the employee of the employment contract). Here, the majority opinion in effect asserts that "cause" for termination comes in two varieties. The first, which I shall call "High Grade" cause, carries that degree of substantiality which excuses the promisor from paying promised compensation. The second variety, which I shall call "Low Grade" cause, is a creature of the majority opinion and is not "cause" at all as conventionally used in the employment context.

What I call "High Grade" cause, the majority terms " 'cause' for the forfeiture of an attorney's compensation." *Somuah*, 352 Md. at 264, 721 A.2d at 691. This is an objective determination. The majority and I agree that if the client has "High Grade" cause for terminating the retainer contract, the attorney is not entitled to any compensation for services. What I call "Low Grade" cause, the majority calls "a 'basis' for an attorney's discharge." *Id.* The majority's "basis" seems to be no more than a bona fide dissatisfaction on the client's part with the attorney's performance. It is a subjective standard. In Part V of the majority opinion, the Court holds that, if the client terminates because of a bona fide dissatisfaction, this "basis" does not bar *quantum meruit* recovery by the attorney for services rendered prior to the termination, but the *quantum meruit* claim becomes contingent and accrues only if, as, and when there is a recovery in the litigation underlying the terminated retainer contract.

On this aspect of the case the majority and I part company. There is no such thing, in my opinion, as "basis," or "Low Grade" cause, and the attorney's right to sue, where the retainer contract has been terminated by the client without traditional, *i.e.*, High Grade cause, is not deferred or converted into a contingent claim.

The majority opinion does not address what constitutes the total absence of cause, even as the majority would define it, but it appears that this would be a bad faith claim of dissatisfaction as the reason for terminating the retainer contract. I infer that, under these circumstances, the majority would honor present Maryland law and permit an immediate suit for the value of the services rendered prior to termination. Thus, instead of permitting an attorney's *quantum meruit* action whenever there is an absence of traditional or High Grade cause for termination, and by permitting an immediate action only if there is a bad faith claim of dissatisfaction with the attorney's services, the majority has for all practical purposes changed the holding in *Skeens* that recognizes accrual of the *quantum meruit* cause of action at the time of termination in any case in which the client terminated without traditional or High Grade cause.

Patently, the purpose of the majority's creation of Low Grade cause is purportedly to distinguish the case at bar from *Skeens*. Part V of the majority opinion tells us that the holding in *Skeens* is really limited to cases in which attorneys are discharged for High Grade cause, whereas the instant matter involves Low Grade cause. If, however, the client's reason for termination is only Low Grade cause, then, under the majority rationale, the attorney has no claim for compensation unless and until the contingency specified in the terminated retainer contract is fulfilled. Under Maryland law prior to today cause was either traditional or High Grade cause, or it was not cause at all.

In the instant matter the petitioner did not have traditional cause. The subject accident occurred in Prince George's County, Maryland on a dual lane highway with a low concrete

median. The petitioner was a passenger in a taxicab that was struck in the rear by a vehicle driven by a drunk driver, who apparently had $100,000 of insurance coverage. The impact caused the taxicab to be propelled over the median strip, to flip, and to land upside down. The petitioner was thrown from the vehicle, possibly as a result of a defective seat or seat belt, and she suffered several broken limbs and a broken jaw. The respondent was sought out by the petitioner's family. He visited the petitioner in Prince George's General Hospital and was engaged by a signed contingent fee agreement. Thereafter the respondent did the following:

● obtained the police report;

● interviewed the three or four eyewitnesses;

● arranged to meet the investigating officer and the eyewitnesses at the accident scene further to determine what happened;

● obtained medical records from the hospital and from the three or four treating physicians;

● engaged an expert in highway design safety to report on possibly defective design of the median;

● put Prince George's County, Maryland on notice under the Local Government Tort Claims Act;

● engaged a nationally known expert in auto design safety to report on possibly defective seat or seat belt design by the manufacturer;

● located, purchased, and stored the demolished taxicab;

● photographed and obtained from others photographs of the petitioner and caused a "day-in-the-life" video film of the petitioner to be made; and

● met with the petitioner on approximately six occasions.

When petitioner's claim had been developed by respondent to the point where suit should be brought, he concluded that the action should be filed in the Circuit Court for Prince George's County, inferentially because all potential defendants were suable there. The respondent thereupon, quite properly,

sought to associate local counsel under an arrangement between local counsel and himself that would involve no additional cost to the petitioner. As an attorney who was not admitted to the Bar of this Court, but who had associate local counsel, respondent would be permitted to file and try petitioner's action under Rule 14 of the Rules Governing Admission to the Bar, Annotated Code of Maryland, Maryland Rules Vol. 2, at 671–72. Rule 14(d) permits the judge presiding over the trial to waive the requirement for presence at trial of local Maryland counsel.

At the point in the relationship between petitioner and respondent when a local counsel was being sought, petitioner discharged respondent. Under the authority of *Skeens* respondent brought the instant suit, without awaiting the outcome of petitioner's action in the hands of another attorney. Trial of the instant action was to a jury which was instructed on the five rules of Maryland law set forth above. The jury was told, without objection, that cause means "good and valid reason." Respondent claimed $11,324.66 in out-of-pocket expenses, and the jury awarded $11,261.01. The respondent claimed compensation for his services by valuing 57.9 hours of time devoted to the matter at $150 per hour, or a total of $8,685. The jury awarded $8,685. Because, concededly, there was no High Grade cause for petitioner's terminating the retainer contract, the majority is forced to create the Low Grade variety of cause in this case in order to find a "basis" for making respondent's *quantum meruit* claim an "if, as and when" claim.

The majority seeks to demonstrate Maryland law's recognition of Low Grade cause by borrowing from cases involving contracts under which the promisor's obligation to continue to pay for personal services is *expressly* conditioned on the promisor's continued satisfaction. *Somuah,* 352 Md. at 254, 721 A.2d at 686. Maryland law requires that, in order for an employment contract to be conditioned upon the employer's subjective satisfaction, the employer must include an express provision to that effect in the employee's contract.

*Ferris v. Polansky,* 191 Md. 79, 59 A.2d 749 (1948), cited by the majority, involved a contract under which an inn hired a small band to perform on weekend evenings from October 11, 1946, through April 30, 1947, but with the following proviso: " 'If Band proves unsatisfactory contract is subject to 2 weeks notice.' " *Id.* at 82, 59 A.2d at 750. We explained the operation of such an express provision in these words:

> "In a contract where the employer agrees to employ another as long as the services are satisfactory, the employer has the right to terminate the contract and discharge the employee, whenever he, the employer, acting in good faith is actually dissatisfied with the employee's work. This applies, even though the parties to the employment contract have stipulated that the contract shall be operative during a definite term, if it provides that the services are to be performed to the satisfaction of the employer. It is not necessary that there exist grounds deemed adequate by the trier of facts for the employer's dissatisfaction. He is the judge as to whether the services are satisfactory. However, this dissatisfaction, to justify the discharge of the employee, must be real and not pretended, capricious, mercenary, or the result of a dishonest design. If the employer feigns dissatisfaction and dismisses the employee, the discharge is wrongful. The employer in exercising the right of dismissal because of dissatisfaction must do so honestly and in good faith."

*Id.* at 85–86, 59 A.2d at 752.

Similarly, *H & R Block, Inc. v. Garland,* 278 Md. 91, 359 A.2d 130 (1976), involved a contract that expressly provided: " 'Employee's failure to perform the duties of his employment as assigned to him in a satisfactory manner . . . shall, without limitation, constitute a failure of performance under this Agreement.' " *Id.* at 93, 359 A.2d at 131. *See also Volos Ltd. v. Sotera,* 264 Md. 155, 159, 286 A.2d 101, 104 (1972) (where the contract provided that it "may be terminated for cause by Employer, including but not limited to Employee's failure to perform his duties in a satisfactory, competent and reasonable manner . . . .").

The retainer contract between the parties to the instant action does not contain any express satisfaction provision, and "in view of the confidential nature of the relationship between attorney and client and the evil that would be engendered by friction or distrust," *Skeens,* 331 Md. at 335, 628 A.2d at 187, it is doubtful that a retainer agreement could contain such a provision. Such a provision would operate as a limitation on the power of the client to terminate. In any event, it is totally unnecessary for the majority to read a satisfaction provision into a retainer agreement inasmuch as those contracts are terminable at will. *Id.*

The rules that are set forth in *Skeens,* and the cases cited therein are described in 3 D. Dobbs, *Dobbs Law of Remedies* § 13.5, at 556 (2d ed.1993), as follows:

"When the client discharges the attorney before the contract is substantially performed, the personal and confidential relationship of attorney and client is implicated. The traditional view is that because of the special nature of the attorney-client relationship, the client must be free to discharge the attorney at any time. This view seems to imply that the client would not be liable on the contract if he discharges the attorney before the attorney has fully performed. Under that view, the client is liable to make restitution for benefits received but not liable for the attorney's expectancy. Put otherwise, the attorney recovers *quantum meruit,* not contract damages."

(Footnote omitted).

II

The majority in the instant matter postpones accrual of the claim for restitution in a contingent fee retainer contract that has been terminated by a client for Low Grade cause until "the fulfillment of the contingency, *i.e.,* where the plaintiff/former client obtains a final judgment." *Somuah,* 352 Md. at 267, 721 A.2d at 693. This is contrary to what we held in *Skeens* and, in my opinion, *Skeens* was correctly decided. The contingency is a provision of the express contract, but here the

client terminated that contract without cause, that is, without any material breach by the attorney. The attorney's claim then becomes one for restitution, and the damages are the value of the services rendered prior to the date of termination. Because the plaintiff/former client, who has been benefitted by the services of the first attorney, makes those benefits available, at the time of termination, to the replacement attorney, the claim in *quantum meruit* unconditionally accrues at the time of termination.[1]

As Dobbs points out, "[s]tatute of limitations aside, the accrual question is mainly a roundabout way of reaching a different issue: how should the court measure restitution?" *Dobbs Law of Remedies* § 13.5, at 558. In the instant matter, the respondent proved the value of his services by multiplying the time devoted to the matter by his hourly rate, and the jury agreed. No issue is presented in this case concerning that method of calculation. Therefore, in my view, the judgment of the Court of Special Appeals should be affirmed.

### III

Further, there appears to be an inconsistency between the mandate under the majority opinion and the reasoning of the majority. The special interrogatories that the jury in this case answered clearly awarded $11,261.01 as reimbursement to respondent for out-of-pocket expenses. That portion of the judgment in the circuit court for the respondent was not, even under the express contract, subject to the contingency. The majority, 352 Md. at 247–48 n. 2, 721 A.2d at 683 n. 2, has quoted the portion of the retainer contract dealing with court costs. The applicable provision reads as follows:

"Client agrees to pay all costs of investigation, preparation and trial of the case, and authorizes and directs [respondent] to deduct from the Client's share of proceeds, and

---

1. If there is no recovery in the underlying suit, the client is liable to the prior attorney for the value of services only if the client terminated the retainer contract without traditional employment contract cause.

pay directly to any doctor, hospital, expert, or other creditor, any unpaid balance due them for Client's care and treatment, or for their services and/or testimony related to this case."

The first clause unconditionally places the obligation for the described expenses on the client, while the second clause is an authorization for the attorney to withhold from any recovery otherwise payable to the client the amount of the described expenses. Consequently, the mandate at least should affirm that part of the judgment that awards expenses.

Judge WILNER has authorized me to state that he joins in the views expressed herein.